PEOPLE v BLASIUS

Docket No. 84040. Argued April 3, 1990 (Calendar No. 1). Decided
September 11, 1990.

Michael E. Blasius was charged in the Third District Court,
Second Division, with possession with intent to deliver more
than fifty grams of cocaine, conspiracy to deliver less than fifty
grams of cocaine, delivery of less than fifty grams of cocaine,
possession with intent to deliver marijuana, possession of a
short-barreled rifle, and possession of a firearm during the
commission of a felony. The court, William L. McManus, J.,
suppressed the fruits of the entry and search of the defendant's
residence by the police without a warrant and dismissed the
case, concluding that the entry of the residence was not justi-
fied by exigent circumstances. The St. Joseph Circuit Court,
James Noecker, J., reversed, holding that the refusal to find
exigent circumstances constituted an abuse of discretion, re-
instated the charges, and remanded the case for further pro-
ceedings. The Court of Appeals, WEAVER, P.J., and McDONALD
and W. R. PETERSON, JJ., reversed in an unpublished opinion
per curiam, concluding that because the entry by the police did
not fall within any recognized exception to the warrant require-
ment, the entry and search without a warrant were unreason-
able in violation of the Michigan and United States Constitu-
tions (Docket No. 103248). The people appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice
RILEY and Justices LEVIN, BOYLE, ARCHER, and GRIFFIN, the
Supreme Court *held:*

Exigent circumstances justified entry of the defendant's resi-
dence by the police without a warrant in order to protect
against the risk of removal or destruction of evidence and to
secure the premises pending the issuance of a warrant.

1. The risk of destruction or removal of evidence may consti-
tute an exigent circumstance exception to the warrant require-
ment. The police may not undertake a nonconsensual residen-

REFERENCES

Am Jur 2d, Searches and Seizures §§ 42, 44, 99, 102, 106.

See the Index to Annotations under House and Home; Search and
Seizure.

tial search or seizure without a warrant unless probable cause that the premises contains contraband or evidence of a crime is shown. Where officers seek to justify an entry without a warrant for the purpose of securing the premises pending the issuance of a warrant, an actual emergency must be shown, and they must articulate specific and objective facts which reveal a necessity for immediate action. In a case where removal or destruction of evidence is of concern, the most objective and compelling justification would be the actual observation of removal or destruction of evidence. More than a mere possibility that there is a risk of the immediate destruction or removal of evidence is required.

2. In this case, the police met the burden of showing probable cause both that an offense had been committed and that the premises contained contraband. While the risk of removal or destruction of quantifiable amounts of the evidence alone would not serve as a rationale justifying the search, the combined evidence provided credibility to the conspirator's assertion that the contraband was "going fast," transforming a presumptively unreasonable search without a warrant into one involving reasonable exigent circumstances providing an exception to the Fourth Amendment warrant requirement. The police officers acted prudently at each step of their investigation and did not manufacture the exigent circumstances.

Justice CAVANAGH concurred in the result only.

Reversed and remanded.

SEARCHES AND SEIZURES — WITHOUT A WARRANT — IMPOUNDMENT OF PREMISES — EXIGENT CIRCUMSTANCES — REMOVAL OR DESTRUCTION OF EVIDENCE.

Where police officers seek to justify the entry of a residence without a warrant for the purpose of securing the premises pending the issuance of a warrant, they must show probable cause to believe that the premises contained contraband or evidence of a crime and articulate specific and objective facts which reveal an actual emergency amounting to more than a mere possibility of an immediate risk of the destruction or removal of evidence, as well as the necessity for immediate action (US Const, Am IV).

*Frank J. Kelley,* Attorney General, *Jeffrey C. Middleton,* Prosecuting Attorney, and *Robert Cares,* Assistant Prosecuting Attorney, for the people.

*Warner, Norcross & Judd* (by *David L. Kaczor*) for the defendant.

BRICKLEY, J. A joint team of federal and local law enforcement officers entered the defendant's residence without a warrant or consent in October of 1986. Once inside, an officer conducted a pat-down search of the defendant and found approximately six ounces of cocaine. The officers remained in the residence while waiting for a magistrate to issue a search warrant. The warrant was issued some five hours later, and the officers conducted a search which additionally uncovered approximately thirty pounds of marijuana and numerous illegal firearms.

This case presents the issue whether exigent circumstances justified the entry of the defendant's residence without a warrant.[1] More precisely, the Court must decide whether the risk of removal or destruction of evidence justified an entry and protective sweep-type search to secure the premises pending issuance of a warrant. We hold that exigent circumstances justified the police entry without a warrant.

I

This appeal arises out of the events of an undercover drug operation by agents and officers of the Drug Enforcement Agency (DEA) and the South-

---

[1] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

The Michigan Constitution embodies a substantially identical prohibition on searches without warrants. Const 1963, art 1, § 11.

west Enforcement Team (SWET). Testimony at the preliminary examination produced the following narrative.[2]

On October 21, 1986, at 3:45 P.M., DEA Agent Gay and one Newbury (apparently a police informant) went to the residence of Gieber, the defendant's alleged coconspirator, for the purpose of buying cocaine.[3] The trio left Gieber's residence in Agent Gay's car. Gieber directed them to a nearby parking lot.

Gieber told Gay that he had to make a phone call and ostensibly departed to do so. However, unknown to Gieber, a police surveillance team watched him walk instead a few blocks to the defendant's residence. The surveillance team also saw Gieber leave the residence in the company of the defendant. Gieber then returned alone to the parking lot where Agent Gay waited.

Agent Gay testified that Gieber returned

> really excited. [Gieber] told me he had just seen a pound and a half of cocaine. It was the best cocaine he had seen in a long time. In fact, [Gieber] described it as crystalline cocaine; it was kind of winking at him; it was kind of hard for him to leave.

The group drove to another location nearby, where Agent Gay handed Gieber $2,400 in premarked cash and directed him to purchase an ounce of cocaine. Gieber again departed. Once again, agents on surveillance observed Gieber walk to the defendant's residence and return to Agent Gay's car. Gieber handed Gay a package containing a solid white substance. Later, a police labora-

[2] Neither the defendant nor his alleged coconspirator Gieber testified at the preliminary examination.

[3] Agent Gay testified that he had similarly scheduled purchases of illegal narcotics from Gieber on two past occasions in recent months.

tory analysis revealed that this package contained approximately one ounce of ninety-four percent pure cocaine.[4]

Agent Gay and Gieber discussed purchasing an additional ounce of cocaine at a later time. However, Gay testified that Gieber

> told me that he couldn't guarantee it. If I didn't get the second ounce today, he couldn't guarantee I'd get it tomorrow. [Gieber] was sure by the end of the afternoon it would be gone [because the cocaine] was a good product. It was going out fast.

Agent Gay took Gieber home about 4:45 P.M. He then immediately met with his superiors in charge of the operation. They quickly discussed a course of action. In order to prevent the evidence from being removed or destroyed, the superiors decided to "impound" the defendant's residence from the inside.

The law enforcement officers asserted two primary reasons for their decision to impound the residence. First, the officers had observed vehicular and pedestrian traffic to the residence:

> [D]uring the two separate times that [Gieber] had gone to the house, we saw people come and go on foot and in vehicles. When we went back the second time, a different vehicle was parked in the driveway that wasn't there during the first time. Our concern was to . . . secure the premises, and get a search warrant.

The vehicular traffic to the residence was of special concern to the officers because

> [i]mmediately preceding our attempts to secure

---

[4] Agent Gay testified that he field-tested the substance, identifying positively as cocaine, before the officers conducted the raid on the defendant's residence.

[the residence], we were also aware that there were vehicles at the residence at that time, which had been the subject of earlier surveillance by the team . . . with respect to narcotics distribution here in Three Rivers, and there were a number of people in the residence.

Second, the officers feared that on the basis of Gieber's statement that the cocaine was "going fast," any delay in obtaining a search warrant would result in the removal of illegal narcotics and the marked money given to Gieber for the initial drug purchase.

[I]f we took the time to go, go ahead and get the search warrant, as we did—it took five hours as it is—we didn't believe the cocaine would still be there five hours later.

The officers thus decided "[t]o secure the house and the people in there, so the evidence wasn't destroyed, so the money wasn't removed, and then at that point [we] would go get a search warrant."

Thus, numerous officers entered the defendant's residence at approximately 5:30 P.M., confronting the defendant's preteen daughter upstairs and escorting her downstairs. The testimony did not reveal which officer first confronted the defendant. However, Officer Orr testified that he encountered the defendant already lying prone on the floor, apparently in custody with four other men.

Officer Orr testified that Mr. Blasius lay within an arm's reach of a gun cabinet which contained an Uzi automatic rifle. Officer Orr patted down the defendant and detected what he described as "a large solid object behind the zipper area of his pants, below the belt . . . [i]t felt to me to be a small handgun." Officer Orr then reached inside defendant's pants and removed a plastic baggy

containing a solid white substance. Police technicians later analyzed this substance and found it to comprise approximately six-and-one-half ounces (182 grams) of ninety-four percent pure cocaine. The police also discovered on the defendant's person $2,100 of the $2,400 in premarked cash given to Gieber. The police arrested and removed the defendant.

The officers waited in the residence with the defendant's wife until they obtained a search warrant approximately five hours later.

The officers explained that it took so many hours to obtain the warrant because

> we were initially prepared to go somewhere else and to do something else than we ended up doing [that evening]. . . . [T]here was a joint investigative activity between [SWET and the DEA], and it did take our putting together information from different people who were at different places at different times, and that complicated . . . the construction of the search warrant.

The officers searched the residence for about five hours after the issuance of the warrant, and discovered approximately thirty pounds of marijuana and numerous illegal firearms.

The people charged the defendant with the following six felonies: (1) possession with intent to deliver more than fifty grams of cocaine, MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii), (2) conspiracy to deliver less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), (3) delivery of less than fifty grams of cocaine, MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv), (4) possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), (5) possession of a short-barreled rifle, MCL 750.224b; MSA 28.421(2), and (6) possession of a firearm

during the commission of a felony, MCL 750.227b; MSA 28.424(2).

## II

The Third District Court, Second Division, conducted the defendant's preliminary examination in December of 1986. At its conclusion, the magistrate suppressed the fruits of the search and dismissed all counts against the defendant.

The magistrate ultimately concluded that exigent circumstances did not justify the entry without a warrant. He issued a wide-ranging opinion that roundly criticized both the exclusionary rule and the inefficiencies of Michigan search warrant procedure. The magistrate then articulated three reasons for suppressing the seized evidence.

First, he concluded that even though the police had probable cause to believe that the defendant possessed cocaine, the facts presented did not justify an immediate search without a warrant. He recognized that "there are exigent circumstances that can be developed for the entry into a home in the absence of a search warrant," but decided that the instant case did not involve such circumstances.[5] He concluded simply that "there must be something more than the *possibility* that evidence will not just be destroyed or evidence *might* be broken up." (Emphasis supplied.)

Second, the magistrate postulated that the police could have chosen alternatives less intrusive than an entry without a warrant:

[While the police] might have found less [cocaine] on [Blasius] 6 hours later or might not have

---

[5] In this connection the magistrate noted that "[i]f . . . Mr. Blasius believed that he had just sold to an undercover agent and was about to flush the stuff down the stool, that might be an exigent circumstance."

> found any on him 6 hours later . . . they cer-
> tainly had reasonable cause to stop anyone who
> left that house . . . so they might have found a
> number of persons in possession who [could] give
> identity, namely testimony in exchange for immu-
> nity.

Third, the magistrate flatly rejected the prosecu-
tion's argument that exigent circumstances existed
"to merely protect the quantity" of drugs the
police might find in the residence. Similarly, the
magistrate declined to find the removal or loss of
the premarked "buy" money constituted an exi-
gent circumstance. For these reasons the magis-
trate decided that "[t]o allow entry into a private
home, even though everybody knows . . . that Mr.
Blasius was selling drugs, with the protections
that the Fifth [sic] Amendment gives us, is of
course an illegal search . . . ."

The circuit court disagreed on review. It re-
versed the magistrate's suppression of evidence
and dismissal of charges against the defendant.
The court held that the magistrate's refusal to find
exigent circumstances constituted an abuse of dis-
cretion. It consequently reinstated all the charges
and remanded the case for further proceedings.

The circuit court analyzed the facts of the in-
stant case in light of *People v Oliver,* 417 Mich
366, 384; 338 NW2d 167 (1983). In *Oliver,* this
Court extracted seven factors relevant to an exi-
gent circumstances determination from a federal
case, *Dorman v United States,* 140 US App DC
313; 435 F2d 385 (1970).[6]

The circuit court concluded that "when all of
the evidence and each one of these factors is
analyzed, it is fair to conclude that several of these

---

[6] The *Oliver* Court added four additional relevant factors of its own,
one of which included "preventing the destruction of evidence . . . ."
*Id.* at 384.

factors may be found to justify or conclude exigent circumstances existed, particularly in combination."

The Court of Appeals reversed the decision of the circuit court. The Court of Appeals enumerated what it described as "the six delineated exceptions [to the warrant requirement] adopted by this Court . . . ." The Court listed these exceptions as "(1) searches incident to lawful arrests; (2) automobile searches and seizures; (3) plain view doctrine; (4) consent; (5) stop and frisk type searches; and (6) hot pursuits."

The Court of Appeals concluded that the "entry by the police in this case does not fall within any of these six exceptions," and opined that "[w]here exigent circumstances do not fall within the ambit of a recognized exception, warrantless entry and search are considered to be unreasonable in violation of the Michigan and United States Constitutions."

In the Court's view, the "only exception [in this case] which could possibly apply would be that of a search incident to lawful arrest," an exception the Court viewed as unavailable because "no arrest was made until well after the unlawful entry . . . since the police did not know whom to arrest at the time of the entry." The Court consequently suppressed all the evidence seized at the defendant's residence as tainted by the initial illegal entry by the police.

III

The Court of Appeals erred in failing to recognize that the exigent circumstance of imminent removal or destruction of evidence may in itself constitute an exception to the Fourth Amendment's warrant requirement. The United States

Supreme Court has consistently interpreted the Fourth Amendment to prohibit residential searches without warrants unless justified by one of the few "specifically established and well-delineated exceptions" articulated by the Court. *Coolidge v New Hampshire,* 403 US 443, 455; 91 S Ct 2022; 29 L Ed 2d 564 (1971); see also *Payton v New York,* 445 US 573, 590; 100 S Ct 1371; 63 L Ed 2d 639 (1980). However, the Court has also often recognized that the risk of destruction or removal of evidence may constitute an exigent circumstance exception to the warrant requirement. While the precise contours of the exigent circumstances exception remain hazy, such an exception clearly does exist.[7]

The Court laid the foundation for an exigent circumstances exception to searches and seizures without warrants in *Johnson v United States,* 333 US 10, 13; 68 S Ct 367; 92 L Ed 436 (1948). In *Johnson,* an informant informed police officers that unknown persons were smoking opium at a hotel. The officers arrived and followed the smell of opium to the defendant's room. After the suspect admitted the officers into the room, they searched it and arrested the defendant for possession of opium. The Court invalidated the search as illegal. In noting that a search for evidence without a warrant requires more than probable cause, the Supreme Court commented:

> The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and de-

[7] See *Michigan v Tyler,* 436 US 499, 509; 98 S Ct 1942; 56 L Ed 2d 486 (1978): "Our decisions have recognized that a warrantless entry by criminal law enforcement officials may be legal where there is compelling need for official action and no time to secure a warrant."

tached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. [333 US 13-14.]

The Court recognized that in certain cases, "exceptional circumstances" might justify a search without a warrant. However, except for "some slight delay necessary to prepare papers and present the evidence to a magistrate," the police in *Johnson* failed to present such exceptional circumstances. The Court dismissed these as "never very convincing reasons . . . ." The Court concluded that exceptional circumstances did not exist because

[n]o suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. *No evidence or contraband was threatened with removal or destruction* . . . . [333 US 15. Emphasis supplied.]

The Court first used the term "exigent" in *MacDonald v United States,* 335 US 451, 456; 69 S Ct 191; 93 L Ed 153 (1948). The Court in *MacDonald* invalidated a search of the defendant's residence for evidence of operating an illegal lottery. The police had forcibly entered the defendant's residence after hearing an adding machine outside his window. The Court suppressed the evidence seized, reasoning,

Power is a heady thing; and history shows that the police acting on their own cannot be trusted.

> And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that *the exigencies of the situation* made that course imperative. [*Id.* Emphasis supplied.]

In *United States v Jeffers,* 342 US 48, 52; 72 S Ct 93; 96 L Ed 59 (1951), the police entered the defendant's hotel room and seized narcotics. The Court invalidated the search, noting that "[t]here was no question of violence, no movable vehicle was involved, nor was there an arrest or *imminent destruction, removal, or concealment* of the property intended to be seized." 342 US 52 (emphasis supplied). The Court refused to find such exigencies, noting that the defendant was not fleeing or seeking to escape, "[n]or was the property in the process of destruction . . . ." 335 US 455.

*Schmerber v California,* 384 US 757, 770; 86 S Ct 1826; 16 L Ed 2d 908 (1966), marked the first instance in which the Court upheld a search without a warrant to prevent the destruction of evidence. In *Schmerber,* the Court upheld the forced medical extraction of blood for a blood alcohol test from a defendant arrested for criminal drunk driving. The Court noted that "[s]earch warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required [concerning] intrusions into the human body . . . ." The Court nevertheless upheld the legality of the search because the arresting police officer

> might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circum-

stances, *threatened "the destruction of evidence"*
. . . . [*Id.* Emphasis supplied.][8]

*Vale v Louisiana,* 399 US 30; 90 S Ct 1969; 26 L
Ed 2d 409 (1970), represents the case most fre-
quently cited as establishing a destruction of evi-
dence exception to the Fourth Amendment. In
*Vale,* police officers with an arrest warrant for the
defendant arranged surveillance of his house. The
officers observed Vale participate in an apparent
drug transaction on the street outside his house.
When Vale became aware of the police presence
and attempted to flee, the officers arrested him on
the front steps of the house. The officers entered
the house and informed Vale that they planned to
search it. Vale's mother and brother returned
home at that time and the officers informed them
of the arrest and impending search. The officers
found heroin in a rear bedroom of the residence.

The Supreme Court invalidated the search.
First, it held that the search of the residence did
not constitute a valid search incident to the arrest.
Second, the allegation that suspects might easily
remove or destroy narcotics could not indepen-
dently support the search without a warrant, espe-
cially since no one occupied the house at the time
of the search. Third, the prosecution did not meet
its burden of showing the existence of exigent
circumstances. The Court noted in this connection
that "*the goods ultimately seized were not in the
process of destruction . . .* [n]or were they about

---

[8] In contrast, in *Welsh v Wisconsin,* 466 US 740, 754; 104 S Ct 2091;
80 L Ed 2d 732 (1984), the Court invalidated a residential entry
without a warrant to arrest a suspect for a misdemeanor drunk
driving offense. The Court reasoned that a residential entry without a
warrant for a nonjailable offense even under exigent circumstances
"is clearly prohibited by the special protection afforded the individual
in his home by the Fourth Amendment."

to be removed from the jurisdiction." *Id.* at 35 (citations omitted, emphasis supplied).

The summary above illustrates that contrary to its pronouncements, the United States Supreme Court has hardly "carefully delineated" the contours of the exigent circumstances exception to the warrant requirement. It seems instead that the Court has suggested four varying indicia of exigent circumstances: the threatened destruction or removal of evidence, the imminent threat of destruction of evidence, evidence in the process of destruction, and a "realistic expectation" that evidence might be destroyed.[9] Given these amorphous standards of exigency, it does not seem at all surprising that the federal circuit courts have produced divergent determinations of the degree of exigency required to support residential searches without warrants.

An analysis of federal circuit court cases involving exigent circumstances supports the proposition that "[t]he circuit courts are in disarray on the justification necessary to permit warrantless actions to prevent destruction of evidence."[10] All the federal circuits acknowledge that the risk of removal or destruction of evidence may justify an entry without a warrant by the police under the exigent circumstances exception. However, none of the circuits have accepted the restrictive "evidence . . . in the process of destruction" for-

---

[9] See *United States v Santana,* 427 US 38, 43; 96 S Ct 2406; 49 L Ed 2d 300 (1976), where the Court commented in a case involving the hot pursuit of a fleeing suspect that "a *realistic expectation* that any delay would result in destruction of evidence" provided additional justification for a residential entry without a warrant. (Emphasis supplied.)

[10] See Salken, *Balancing exigency and privacy in warrantless searches to prevent destruction of evidence: The need for a rule,* 39 Hastings L J 283, 300, 323 (1988): "It is clear that the [federal] circuits disagree about the permissibility of warrantless intrusions based on the threatened destruction of evidence. They also disagree about the factors that should be considered in making the determination."

mula *Vale* suggested as controlling.[11] Instead, the federal circuits "have been inclined to state [the destruction or removal of evidence] exception in much broader terms, such as a 'great likelihood that the evidence will be destroyed or removed before a warrant can be obtained,' that the evidence is 'threatened with imminent removal or destruction,' or that the police 'reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.' "[12] The federal circuit courts' divergence on the appropriate standard of exigency in destruction or removal cases arguably has resulted in the unfortunate situation in which "the outcome of a case [involving exigent circumstances may depend] on the circuit in which it is pending."[13]

Selective (or creative) citation of federal circuit court authority may thus support contradictory positions on the degree of exigency justifying evidence of searches without warrants in cases involving exigent circumstances.

Furthermore, additional confusion may result when a court fails to differentiate exigent circumstances involving entries without warrants to effectuate an arrest from exigent circumstances involving prevention of the destruction or removal of evidence. The circuit court in this case inadvertently compounded the magistrate's fact finding and analysis by failing to make such a differentiation.

The St. Joseph Circuit Court relied on a decision which incorporated factors from one of the first federal circuit cases to analyze exigent circumstances, *Dorman v United States, supra.* Unfortu-

---

[11] See Salken, *id.* at 300.

[12] 2 LaFave, Search & Seizure (2d ed), § 6.5(b), p 658.

[13] See Salken, n 10 *supra* at 324.

nately, *Dorman* had nothing to do with the risk of destruction or removal of evidence. Rather, in *Dorman,* the police faced the dilemma of waiting to obtain a warrant or acting immediately to enter a residence to arrest a suspect who might have escaped.

The *Dorman* court, before concluding that the risk of escape justified the arrest without a warrant, outlined the following factors relevant to determining the existence of exigent circumstances:

(1) whether the case involves a serious offense,

(2) whether the police believe the suspect is armed,

(3) a strong showing of probable cause,

(4) a strong belief that the suspect is on the premises,

(5) probability that the suspect will escape,

(6) whether the police enter forcibly or peacefully, and

(7) whether the police enter at night. *Id.* at 320-321.

These factors (at best) provide guidance in cases of arrests without warrants.[14] However, the *Dorman* factors provide only marginal guidance for determining whether police may conduct an entry without a warrant to secure the premises to prevent the destruction of evidence. Some of the *Dorman* factors, such as whether the suspect is armed or might escape, have little bearing on whether a suspect will destroy or remove evidence. Other factors, such as strong probable cause of an

[14] Some analysts have questioned the efficacy of the *Dorman* factors even in this connection. See Caldwell & Ghormley, Vale *to* Segura [v United States, 468 US 796; 104 S Ct 3380; 82 L Ed 2d 599 (1984)]: *The wrong road,* 17 SW Univ L R 473, 480, n 35 (1988): "[The *Dorman*] factors are framed in such way as to provide little or no help to police in the field."

offense, the seriousness of the offense,[15] and the manner and timing of the police entry, while highly relevant in determining the overall reasonableness of police conduct, do not address the threshold issue of the risk of destruction or removal of evidence.

In contrast to *Dorman, United States v Rubin,* 474 F2d 262, 267 (CA 3, 1973), represents a thoughtful and more useful explication of the factors relevant to determining when the risk of loss or destruction of evidence justifies a residential search without a warrant. In *Rubin,* undercover police officers tracked a crated shipment of hashish from an airport. The officers watched a codefendant take the crate to the defendant's home. The codefendant left Rubin's residence without the crate. The police trailed the codefendant's car. They stopped the car and arrested the codefendant after he began driving evasively.

The codefendant yelled out, " 'Call my brother' " to a crowd of spectators watching the arrest. The police feared this outburst would alert suspects in the residence of the investigation. They stormed Rubin's residence and seized hashish. *Id.* at 269.

The *Rubin* court surveyed the Supreme Court cases on exigent circumstances in its opinion validating the search. The *Rubin* court recognized that "each of these cases speaks of the high standards of exigency which must be present to justify warrantless searches . . . ." *Id.* at 266. Nevertheless, the court rejected the proposition that "these cases allow emergency 'justification' only when the searching officers have knowledge that evidence is actually being removed or destroyed." *Id.*

The *Rubin* court discounted the significance of the "evidence in the process of destruction" stan-

[15] See *Welsh v Wisconsin,* n 8 *supra.*

dard suggested by the Supreme Court in *Vale,* commenting that

> [a]lthough [*Vale*'s evidence in the process of destruction language] might suggest that the emergency exception must be construed to require knowledge that the evidence is actually being removed or destroyed, the omission of a single word [threatened] should not be given such significance, especially in light of the facts in *Vale.* [*Id.* at 267.]

The *Rubin* court held that a residential search without a warrant requires two justifications: probable cause that an offense has been committed, and a reasonable conclusion by the police "that the evidence will be destroyed or removed before [the police] can secure a search warrant . . . ." *Id.* at 268. The court outlined five factors relevant to assessing the reasonableness of the officer's conclusion that exigent circumstances exist:

> (1) [T]he degree of urgency involved and the amount of time necessary to obtain a warrant,
> (2) [The] reasonable belief that the contraband is about to be removed,
> (3) [T]he possibility of danger to the police officers guarding the site of the contraband while a search warrant is sought,
> (4) [I]nformation indicating the possessors of contraband are aware that the police are on their trail,
> (5) [T]he ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." [*Id.* Citations omitted.]

This Court has examined the exigent circumstances exception much less frequently than the

federal courts and has never proffered the kind of detailed analysis expounded in *Rubin.* In *People v Oliver, supra,* this Court held that a motel room itself does not create an exigent circumstance that would justify an entry without a warrant by police to arrest a suspect in the room. As noted earlier, this Court extrapolated the *Dorman* factors to determine whether exigent circumstances existed. We commented in *Oliver* that the risk that a suspect might destroy evidence could comprise an exigent circumstances exception to the warrant requirement. However, we noted that no such exception applied under the facts presented because "there was no reason [for the police] to believe that defendant was about to destroy evidence . . . ." 417 Mich 385.

In an administrative search case, *People v Tyler,* 399 Mich 564; 250 NW2d 467 (1977), aff'd sub nom *Michigan v Tyler,* 436 US 499; 98 S Ct 1942; 56 L Ed 2d 486 (1978), this Court recognized that "searches [without warrants] are an exception, justified only by exceptional circumstances . . . ." 399 Mich 584. The Court commented in passing that

> [i]f there are exigent circumstances, such as *reason to believe that the destruction of evidence is imminent* . . . no warrant is required . . . . [*Id.* at 578.][16]

### IV

The sparse analysis available from this Court and the apparent confusion of the courts below in analyzing this case illustrate the need for us to

---

[16] This Court has also very briefly commented on exigent circumstances in a number of cases. See *People v Holloway,* 416 Mich 288; 330 NW2d 405 (1982); *People v Crawl,* 401 Mich 1, 28-29; 257 NW2d 86 (1977); *People v White,* 392 Mich 404, 410; 221 NW2d 357 (1974).

articulate some standards to determine when exigent circumstances exist justifying an entry and search without a warrant. The need for concrete standards for determining when exigent circumstances exist seems vital both to protect the rights of individuals against unreasonable searches and seizures and to guide courts and law enforcement officers.[17] The invasion of the home, in particular, by unreasonable searches constitutes "the chief evil" which our constitution sought to prevent.[18] For this reason it is vital that courts critically evaluate police assertions of exigent circumstances as a justification for entering a residence without a warrant. We suggest the following criteria to guide the lower courts in assessing exigent circumstances in removal or destruction of evidence cases.

First, the police may of course undertake no nonconsensual residential search or seizure without a showing of probable cause. Therefore, a court reviewing an entry without a warrant by the police on the basis of exigent circumstances should first determine whether probable cause exists that the premises contain contraband or evidence of a crime.[19]

Second, where officers seek to justify an entry without a warrant for the purpose of securing the

[17] See Brady, *Two models of the Fourth Amendment,* 83 Mich L R 1468, 1500-1501 (1985): "Fourth Amendment law, to be effective in limiting inappropriate police behavior while at the same time allowing for effective law enforcement, must be a coherent and relatively simple doctrine that a policeman can readily understand and apply."

[18] *United States v United States District Court for the Eastern District of Michigan,* 407 US 297, 313; 92 S Ct 2125; 32 L Ed 2d 752 (1972).

[19] See *Zurcher v Stanford Daily,* 436 US 547, 556; 98 S Ct 1970; 56 L Ed 2d 525 (1978): "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."

premises pending a warrant, they must show the existence of an actual emergency and articulate specific and objective facts which reveal a necessity for immediate action.

In the context of a removal or destruction of evidence case, the most objective and compelling justification would be an actual observation of removal or destruction of evidence or such an attempt. Absent such compelling facts, the police must present facts indicating more than a mere possibility that there is a risk of the immediate destruction or removal of evidence. It seems self-evident that "warrantless searches of a home should not [be conducted by the police or validated by the courts] every time evidence is merely 'threatened with destruction' [because police] may rationally perceive possibilities of destruction whenever they think evidence [of contraband] is on the premises."[20] To validate searches of a residence on the basis of hypothetical possibilities of destruction or removal would essentially nullify Fourth Amendment protections. However, in those cases where the police can show an objectively reasonable basis to believe the risk of destruction or removal of evidence is imminent—that immediate action is necessary before they can obtain a warrant—they may enter a residence for the limited purpose of securing the premises pending issuance of a search warrant.

An examination of the facts of the instant case under these standards leads us to the following conclusions. First, the police met their burden of showing probable cause both that an offense had been committed and that the premises contained contraband. Police observed Gieber go to defendant's residence, meet the defendant, and return

---

[20] Note, *Police practices and the threatened destruction of tangible evidence*, 84 Harv L R 1465, 1473 (1971).

with cocaine. These facts, combined with the fact that the police observed traffic to the residence of known narcotics dealers would lead a reasonable person to believe that there was criminal activity afoot on the premises.

Of course, these facts alone do not lead to a conclusion that there was a threat of the imminent *destruction* of evidence. In fact, nothing in the testimony of anyone in this case indicates that suspects or third parties planned to destroy evidence. The facts presented indicate that the suspects did not know of the police investigative presence.[21] Rather, the exigent circumstances in this case consisted solely of a risk that suspects might remove evidence via sales to consumers.

As we noted earlier, a mere possibility that evidence might be removed does not rise to an exigent circumstance. Rather, the threshold question in this connection is this: Can the police produce specific facts supporting a reasonable and objective belief that there is an imminent risk of removal of evidence by suspects or third parties? We think the combined facts here supported the officers' assertion that such a risk did exist.

The alleged coconspirator Gieber told the agent that cocaine would not be available until a certain time, indicating a shipment had just arrived. Gieber went to defendant's residence and returned with cocaine. The investigating agent inquired about procuring another ounce of cocaine. Gieber replied that the cocaine "was going fast" and might be gone by the end of the day. The defendant argues that one could regard this statement as mere "puffing" of a salesperson. In the abstract, this point has validity. However, the coconspira-

---

[21] An officer did testify that the police knew of the presence of a police radio monitor in the residence but conceded that "I don't believe [the defendant] could monitor us."

tor's "going fast" statement did not occur in a cognitive vacuum. The police stated they observed vehicles licensed by known narcotics traffickers arrive and depart the defendant's residence. This combined evidence provided credibility to the co-conspirator's assertion that the contraband was "going fast."

The prosecution also argues that the risk of loss of the marked money additionally justified the entry without a warrant. This argument has some support in the case law of other jurisdictions.[22] Nevertheless, we remain reluctant to hold that the risk of removal of marked police money would alone justify an entry without a warrant. To do so would recognize an exigency created to some degree by the police themselves. However, it strikes us that in this case the risk of the removal of the marked money via sales to consumers represented an objectively reasonable risk coextensive to the risk of the removal of the cocaine. The fact that the police did not know in advance that they would end up at defendant's residence makes preventing loss of the marked money a credible supplemental justification for the entry without a warrant. This is not to say that in every case where police choose to use marked money for drug purchases an exigent circumstance is thereby present. However, all factors viewed in combination in this case, including the risk of removal of the marked money, supported the objective risk of a great likelihood that evidence would be removed in small quantities unless the police acted immediately.[23]

The prosecution additionally argues that the

---

[22] See *Diggs v State,* 531 NE2d 461 (Ind, 1988), cert den 490 US 1038; 109 S Ct 1939; 104 L Ed 2d 410 (1989); *State v Peardot,* 119 Wis 2d 400; 351 NW2d 172 (1984).

[23] See *United States v Curran,* 498 F2d 30, 35 (CA 9, 1974).

need to protect the fixed quantity of drugs in the residence from removal would justify an entry without a warrant. We find it unnecessary to review this argument because the facts before us do not present a scenario where the police entered without a warrant to protect from removal a fixed, as opposed to an unknown, quantity of contraband.

V

We conclude that in general, the police officers in this case acted reasonably under the exigent circumstances they confronted. They entered the defendant's residence, conducted a pat-down search of the defendant for weapons,[24] and waited for a warrant before performing a complete search. The fact that the police took the limited action of impounding the house and guarding it until the paperwork for a warrant could be completed five hours later indicates that the police tried to perform the most limited intrusion available.[25] The police remained in the residence another three to five hours after they secured a warrant. This conduct indicates they did not obtain the search warrant as a mere formality. The fact that it took them approximately five hours to obtain a warrant together with other testimony in the record indicates they had not anticipated ending up at the defendant's residence. Of course, where the police can anticipate in advance the likelihood of having to search a particular residence, their failure to obtain a warrant in advance

[24] A search limited to an area immediately surrounding an arrestee to prevent the arrestee from obtaining weapons or destroying evidence does not violate the Fourth Amendment. *Chimel v California*, 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

[25] In contrast, see *Mincey v Arizona*, 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978), where the Court invalidated as unreasonable a search by police of a defendant's residence without a warrant which lasted for four days.

where probable cause exists contributes to the exigency and ought not to be validated. That did not happen here.

The case before us represents one where officers acted prudently at each step of their investigation and did not manufacture the exigent circumstances. Had the police ignored the available information of a risk of imminent removal of evidence, a criminal prosecution could have been jeopardized. Viewed in this light, the imminent risk of loss or removal of evidence transformed a presumptively unreasonable search without a warrant into a reasonable search under the exigent circumstances exception to the Fourth Amendment. We remand this case to the district court for proceedings consistent with this opinion.

RILEY, C.J., and LEVIN, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with BRICKLEY, J.

CAVANAGH, J., concurred in the result only.