*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANSEN WILLIAM EVANS,

Defendant-Appellant.

FOR PUBLICATION
May 08, 2025
11:49 AM

No. 371021
Kalkaska Circuit Court
LC No. 23-004811-FH

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

MURRAY, P.J.

In this interlocutory appeal, defendant appeals by leave granted[1] the order denying his motion to suppress evidence obtained from his cell phone, which a Michigan State Police trooper seized (but did not search) without a warrant. We affirm.

## I. BACKGROUND

The case against defendant arose when he contacted a Michigan State Police post to report that a female was blackmailing him into allowing her to use his credit card. State Trooper Koedy Dole answered the call, and after speaking with defendant, agreed to meet defendant at his house. This first meeting occurred at approximately 2-3:00 p.m. At that time defendant described the circumstances of the blackmail attempt, including that defendant had "met" a female online, and that she had shared indiscreet pictures with him. During these communications, the female told defendant that she needed to borrow his credit card to purchase car insurance, but apparently instead made a discretionary clothing purchase. Upon defendant's objection, the female stated that if defendant took the issue to police, she would let them know he had indiscreet pictures of an underage female. Defendant explained to Dole that the female had previously told him she was

---

[1] *People v Evans*, unpublished order of the Court of Appeals, entered October 7, 2024 (Docket No. 371021).

over 18, and the website they met through only allowed participants who were over 18. But, he admitted to Dole, he did have some indiscreet pictures of the female on his phone.

Dole left defendant's house after telling him he would further investigate the female. That same day, Dole learned that the female was 17, and with this information in hand, he returned to defendant's house "to protect the evidence and seize the evidence on [defendant's] phone," believing he needed to preserve evidence of the photos on defendant's phone, especially because defendant was already aware that there was a possibility the female was underage. Dole believed it was possible to instantly delete messages and photographs from phones, although he also thought the phone would retain a record of deletions.

After arriving back at defendant's house at approximately 8-9:00 p.m., and entering it with defendant, Dole told defendant that he had confirmed that the female was 17 years old, and that Dole would require defendant's phone. Defendant told Dole that he had a photograph of the female's vagina on his phone, and refused to provide his phone. After several more minutes, defendant retrieved the phone from within the house and handed it over to Dole.

Once Dole obtained the phone, he asked defendant to sign a "consent to search form" for police to search the phone, but defendant refused. In light of that refusal, Dole told defendant that he would be applying for a search warrant. At this point, Dole had three hours remaining on his shift, but it took him an hour to take the phone to the State Police Post, where it was placed in a "Faraday bag."[2] The interaction between Dole and defendant occurred on Friday, December 2, and Dole applied for a warrant at the beginning of his next shift, which was Wednesday, December 7. The magistrate signed the warrant, and defendant's phone was sent to the Computer Crimes Unit where it found 18 videos and 190 images of child sexually abusive material.

Prior to trial, defendant moved to suppress evidence obtained from the phone, arguing that the phone was unlawfully seized, which in turn made the subsequent search invalid. Defendant further argued that the search warrant and supporting affidavit were invalid for additional reasons. At the conclusion of the evidentiary hearing, the trial court denied defendant's motion. The trial court concluded that both probable cause and exigent circumstances existed because (1) defendant admitted he had inappropriate photos of a minor on his phone and (2) material could readily be deleted from cell phones, possibly without even physically possessing the phone. It reasoned that application of the exception depended on whether a defendant knew something about an investigation that would motivate him to destroy evidence from a phone, which could give law enforcement legitimate concern that the defendant would imminently destroy the evidence. To that point, the trial court opined that, at the time of defendant's first interaction with Dole, defendant knew that he had an inappropriate photo of the female and that the female had asserted to him that she was underage. That, the trial court found, was enough to create an exigent circumstance under caselaw. And, the trial court found, once Dole returned and told defendant

---

[2] A Faraday bag is a conductive enclosure, usually a metal mesh, that blocks some electromagnetic radiation, like radio waves. See *Riley v California*, 573 US 373, 390-391; 134 S Ct 2473; 189 L Ed 2d 430 (2014).

that the female was underage and that Dole wanted to look at defendant's phone, additional concern arose that defendant would try to destroy evidence from the phone.

The trial court considered and rejected the argument that Dole created the exigency by telling defendant that he knew the female was underage, reasoning that Dole could have seized the phone during the first interaction but took a chance by allowing defendant to retain the phone. The trial court therefore held that the combination of the probable cause Dole had that the phone contained evidence of a crime, and the exigency of preventing any deletion of the photos from defendant's phone, made the warrantless seizure of the phone reasonable.

## II. ANALYSIS

The sole question on appeal is whether the prohibition on unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution required Dole to obtain a search warrant before *seizing* (but not searching) the phone from defendant when Dole (1) had probable cause to believe that the phone contained evidence of a crime, and (2) determined that it should be confiscated to preserve evidence contained in the phone. We hold that it does not.

A trial court's findings of fact in a suppression hearing are reviewed for clear error, *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020), as is a trial court's finding of an exigency, see *People v Smith*, 191 Mich App 644, 647; 478 NW2d 741 (1991). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). This Court reviews de novo the application of the law or the application of constitutional standards to those facts. *People v Duff*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163961); slip op at 5.

> Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. The lawfulness of a search or seizure depends on its reasonableness. . . . [A] seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property. Ordinarily, searches or seizures conducted without a warrant are unreasonable per se, and when evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial. However, several exceptions exist such that a warrant is not always required. [*People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 6 (quotation marks and citations omitted).]

We first emphasize that we are not addressing the validity of a warrantless search; there is no dispute that police obtained a warrant before searching the contents of defendant's cell phone.[3] Instead, we are addressing the validity of a warrantless seizure of personal property to protect evidence of a crime contained in that personal property. As one might surmise, there is an important distinction between a search and a seizure. *People v Hughes*, 506 Mich 512, 529-530;

---

[3] While defendant did contest the search warrant in the trial court, the only challenge on appeal is to the seizure.

958 NW2d 98 (2020). "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton v California*, 496 US 128, 133; 110 S Ct 2301; 110 L Ed 2d 112 (1990).

A seizure of a person's papers or effects is "*per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v Place*, 462 US 696, 701; 103 S Ct 2637; 77 L Ed 2d 110 (1983). But "[w]here law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant," the United States Supreme Court "has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Id.*[4] In fact, at least up until 2001, the Court recognized that it had "found no case in which [it] has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *Illinois v McArthur*, 531 US 326, 334; 121 S Ct 946; 148 L Ed 2d 838 (2001).

Each of the exceptions to the warrant requirement require "reasonableness and probable cause." *In re Forfeiture of $176,598*, 443 Mich 261, 266; 505 NW2d 201 (1993) (quotation marks and citation omitted). "In the context of a removal or destruction of evidence case," if the police have not actually observed an attempted destruction of evidence, they may conduct a warrantless seizure if they "present facts indicating more than a mere possibility that there is a risk of the immediate destruction or removal of evidence." *People v Blasius*, 435 Mich 573, 594; 459 NW2d 906 (1990).

There is no challenge to the trial court's conclusion that Dole had probable cause to believe defendant's phone contained evidence of a crime; defendant told Dole that he had at least one picture of the female's vagina on his phone, and Dole had been informed that the female was a minor. Thus, the only questions are (1) whether the exigency of the circumstances permitted Dole to seize the phone, and (2) whether the police were diligent in obtaining a warrant. *McArthur*, 531 US at 334.

"To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances." *Missouri v McNeely*, 569 US 141, 149; 133 S Ct 1552; 185 L Ed 2d 696 (2013). The police must have "an objectively reasonable basis to believe . . . that immediate action is necessary before they can obtain a warrant[.]" *Blasius*, 435 Mich at 594. Importantly, that reasonableness must be considered from the perspective of the police. *People v Cartwright*, 454 Mich 550, 559; 563 NW2d 208 (1997). And, acting without a warrant is not justified if the police created the exigency by either acting, or threatening to act, in

---

[4] "These exceptions include, but are not limited to, the following: (1) searches incident to a lawful arrest, (2) automobile searches, (3) plain view seizure, (4) consent, (5) stop and frisk, and (6) exigent circumstances." *Johnson v VanderKooi*, 509 Mich 524, 538; 983 NW2d 779 (2022) (quotation marks and citation omitted).

violation of the Fourth Amendment. *Kentucky v King*, 563 US 452, 462-463; 131 S Ct 1849; 179 L Ed 2d 865 (2011); *United States v Meyer*, 19 F4th 1028, 1033 (CA 8, 2021).

Long before the advent of cell phones that contain more data than one could ever imagine, the Supreme Court of the United States held that it was constitutionally reasonable for police to temporarily seize personal property ("effects" under the Fourth Amendment) to preserve evidence of a crime while police sought a search warrant. For example, in *Place* the Court held reasonable a warrantless seizure of luggage in an airport (essentially a "*Terry*[5] stop" of the luggage to allow a narcotics detection dog to smell the luggage), because the brief detention was based on a reasonable and articulable suspicion that an item may disappear. *Place*, 462 US at 706. See also *United States v Jacobsen*, 466 US 109, 120-121; 104 S Ct 1652; 80 L Ed 2d 85 (1984) (holding that the temporary warrantless seizure of a tube and plastic bags was reasonable because there was probable cause to believe they contained contraband).

With respect to cell phones, more than a decade ago the Supreme Court recognized that because cell phones have such large storage capacities, they are essentially mini computers containing a plethora of data and information about a person, from financial information to personal data. Thus, cell phones and their contents are subject to the protections of the Fourth Amendment. See *Riley v California*, 573 US 373, 393; 134 S Ct 2473; 189 L Ed 2d 430 (2014) ("Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."). Accord *People v Carson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355925); slip op at 13, lv gtd 11 NW3d 269 (2024).

But at the same time the *Riley* Court recognized that, because of cell phone technology and the ability to quickly delete information from them, it can be reasonable for officers to seize cell phones to prevent the destruction of evidence while seeking a warrant. See *Riley*, 573 US at 388 ("Both [of the defendants] concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant. That is a sensible concession.") (citation omitted), citing *McArthur*, 531 US at 331-333 (holding a warrantless seizure preventing a suspect from entering a trailer unaccompanied for two hours while officers obtained a warrant was reasonable because he might destroy drug evidence).

Since *Riley*, courts at both the federal and state level have been fairly uniform in concluding that, when police have (1) probable cause[6] to believe evidence of a crime is contained in a cell

---

[5] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[6] As the *Jacobson* Court recognized, there are certain warrantless seizures that can be supported by a lesser showing of reasonable suspicion. *Jacobson*, 466 US at 121 & n 20, citing *Place*, 462 US 696. See also *People v Beilman*, 512 Mich 933, 946 (2023) (ZAHRA, J., dissenting) ("The Sixth Circuit has been even more concise: the United States Supreme Court has approved the

phone and (2) a legitimate concern that the information could be deleted from that cell phone, police act reasonably in seizing the phone pending the diligent seeking of a search warrant.  See, e.g., *Andersen v DelCore*, 79 F4th 1153, 1166-1167, n 8 (CA 10, 2023) (holding the warrantless seizure of a cell phone was reasonable "to prevent the deletion of incriminating evidence that the officer had probable cause to believe existed on the cell phone" while the officer obtained a search warrant); *United States v Graham*, 123 F4th 1197, 1240 (CA 11, 2024) ("An officer retrieved Mr. Jones' cell phone during a pat down following his detention and arrest.  According to Agent Perez, cell phones hold evidentiary value as the mediums of narcotics transactions because they contain communications with customers and suppliers and, as relevant here, photographs that are used for social media posts.  Mr. Jones' cell phone therefore had independent evidentiary value and was properly seized to prevent the concealment or destruction of evidence it may have contained."); *United States v Bragg*, 44 F4th 1067, 1071 (CA 8, 2022) ("Bragg's iPhone was seized incident to his lawful arrest. . . .  Because a seizure is generally less intrusive than a search, the Supreme Court 'has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search . . . would have been held impermissible.' "); *United States v Brown*, 701 F3d 120, 126-127 (CA 4, 2012) (holding a warrantless seizure of a defendant's laptop was reasonable to prevent the destruction of evidence of child pornography); *Smith v State*, 140 Nev 19; 545 P3d 716, 722 (2024) ("Here, officers were justified in seizing Smith's phone, even without a warrant, under the imminent destruction of evidence exigency. When Smith encountered officers executing the search warrant on his apartment, he was alerted to their investigation. At that point, Smith could have deleted or destroyed crucial evidence had he retained physical possession of the phone. Thus, we conclude that the seizure of Smith's phone was proper due to exigent circumstances."); *Gutierrez v State*, 585 SW3d 599, 610-611 (Tex App, 2019) (holding warrantless seizure reasonable based on officer's testimony that there was probable cause to believe there was evidence in the cell phone, and that the photos could be deleted if the phone was not seized); *Commonwealth v Cruzado*, 480 Mass 275, 282-283; 103 NE3d 732 (2018) ("exigent circumstances" supported warrantless seizure of cell phone where police had probable cause to believe that it contained evidence of crime and because of "the risk of someone taking or tampering with [it]");  *State v Horst*, 880 NW2d 24, 34 (Minn, 2016) (Citing *Riley* and holding that "[i]t is significant that the item seized was a cellphone. As the Supreme Court recently observed, the owner of a cellphone or other mobile digital device can quickly and easily destroy the data contained on such a device.  Horst could have readily erased text messages and call logs or physically destroyed the cellphone altogether if the investigator had not seized it during the interview.") (citation omitted).

We conclude, as did the trial court, that the seizure of the cell phone was reasonable under the totality of the circumstances.  As recounted earlier, even before Dole first arrived at defendant's home, defendant was aware that he had inappropriate photo(s) of the female on his phone, and that she was claiming to be a minor.  Once Dole was apprised of this information, it would have been reasonable for Dole to seize the phone pending an investigation into the female's age and the seeking of a search warrant, if necessary.  But, instead, he allowed defendant to retain it, with defendant now knowing that Dole was going to investigate whether the female was in fact a minor.

---

temporary seizures of property under *reasonable suspicion*, and 'seizures based on probable cause have long been lawful' "), citing *United States v Respress*, 9 F3d 483, 486 (CA 6, 1993).

Dole's divulgence to defendant later that day that the female was a minor, and defendant's initial resistance/refusal to turn the phone over to Dole, cemented the reasonableness of confiscating the cell phone to preserve evidence (which defendant admitted existed) pending the seeking of a search warrant. See *DelCore*, 79 F4th at 1164 ("Here, exigent circumstances existed because Mr. Andersen refused to hand over a cell phone that Detective Matarazzo had reason to believe contained probative evidence relating to an ongoing investigation into child abuse."); *United States v Cephas*, 254 F3d 488, 495 (CA 4, 2001) (fact that a suspect is "aware that the police are on [his] trail" supports an exigent circumstances finding), quoting *United States v Turner*, 650 F2d 526, 528 (CA 4, 1981); *Meyer*, 19 F4th at 1032-1033 ("Meyer's suspicious answers, including his insistence that he have time alone with his devices before the agents could see them, is what led to a sense of urgency, a 'now[-]or[-]never' scenario.") (citation omitted; alteration in original); *United States v Babcock*, 924 F3d 1180, 1194-1195 (CA 11, 2019) ("all the exigent-circumstances doctrine requires" is that an officer reasonably conclude that the defendant "had the ability and incentive to, after learning of the investigation . . ., destroy damning information contained on his phone").

"To be clear, it's not that a cell phone *itself* creates an exigent circumstance." *Babcock*, 924 F3d at 1194. Instead, it is the combination ("totality of the circumstances") of the ability to quickly delete evidence from these phones, the admitted evidence of a crime on the phone, defendant's awareness of the potential crime and the police investigation, and his initial reluctance to turn it over, which together created a sufficient basis for Dole to reasonably believe that the evidence could be destroyed if the phone was not immediately seized pending obtainment of a search warrant.

Contrary to defendant's argument, the prosecution was not required as a matter of law to present evidence showing defendant's actual intent to delete information before Dole could seize the cell phone. *Blasius* certainly has no such requirement, as defendant seems to acknowledge on appeal.[7] Rather, the *Blasius* Court simply recognized that the best evidence of an imminent destruction of evidence was the actual destruction or attempted destruction of the evidence. *Blasius*, 435 Mich at 594. But that was not required, and in those cases where that type of compelling evidence is not present, the prosecution must show more than just a mere possibility that the evidence would be destroyed. *Id*. at 595 (holding that police must produce facts supporting a reasonable and objective belief that a suspect may imminently destroy evidence). And here, as many courts have recognized, and as the trial court found, it was objectively reasonable for Dole to conclude that, because of defendant's knowledge that his phone contained potential criminal evidence, and that police were actively investigating the circumstances of the crime, coupled with

---

[7] *Blasius* involved a warrantless entry into a home in order to secure the home and its contents from destruction. *Blasius*, 435 Mich at 575. And, as the Court recognized in its discussion on the proper test to apply, warrantless entry into the home is the "chief evil" that the Fourth Amendment guards against. *Id*. at 593. Hence, *Blasius* dealt with the privacy interest in one's home, while we address the possessory interest in personal property, which raises slightly different Fourth Amendment concerns.

the ease of deleting evidence from cell phones, there was an imminent risk of the destruction of evidence from defendant's phone.

A permissible warrantless seizure, however, may still be unreasonable if police fail to obtain a warrant within a reasonable period of time. See *McArthu*r, 531 US at 332 (explaining a seizure must last "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant"). This holds true because "a seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration . . . ." *Segura v United States*, 468 US 796, 812; 104 S Ct 3380; 82 L Ed 2d 599 (1984). Thus, the second inquiry into the reasonableness of the seizure is the length of time the cell phone was seized before a warrant was requested. Neither in the trial court nor here does defendant argue that police acted unreasonably long in seeking the search warrant, and as a consequence, the trial court made no finding on that issue. Because there is no challenge to this aspect of the exigent circumstance exception, we could treat it as irrelevant to resolving defendant's appeal. However, because it is a necessary consideration to application of this exception to the warrant requirement, and the facts necessary to decide the legal issue are undisputed, we will address this last aspect of the exception.

There is no bright-line rule for determining when a delay becomes unreasonable. Instead, courts assess the reasonableness of a seizure by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 US at 703. See also *McArthur*, 531 US at 331 (instructing courts to "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable"). When conducting this balancing, courts consider factors like the "brevity" of the seizure, the strength of the State's basis for the seizure, the degree and significance of the interference with the defendant's property, and "whether the police diligently pursue[d] their investigation." *Place*, 462 US at 709. See also *United States v Smith*, 967 F3d 198, 205-206 (CA 2, 2020); *United States v Shrum*, 908 F3d 1219, 1231 (CA 10, 2018); *United States v Laist*, 702 F3d 608, 613-614 (CA 11, 2012) (collecting cases).

Several factors point to the conclusion that Dole acted reasonably in pursuing the search warrant. First, Dole had probable cause to believe the phone contained evidence of a crime, providing the state with a higher interest in preserving the phone to avoid destruction of evidence. *United States v Burgard*, 675 F3d 1029, 1033-1034 (CA 7, 2012) (explaining, in justifying a six-day delay, that a seizure supported by probable cause permits a much greater intrusion than a seizure supported by mere reasonable suspicion). Second, this was only a possessory seizure, not a search, which is a consideration in determining the reasonableness of the time police take to seek a search warrant. See, e.g., *Segura*, 468 US at 810 ("As we have noted, however, a seizure affects only possessory interests, not privacy interests. Therefore, the heightened protection we accord privacy interests is simply not implicated where a seizure of premises, not a search, is at issue. We hold, therefore, that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.").

After all, the police did not search the contents of defendant's cell phone until after obtaining a warrant to do so, causing no harm to defendant's privacy interests. See *Burgard*, 675 F3d at 1033 ("All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures," as we have here, as compared to seizures supported by a lesser degree

-8-

of suspicion.); *Hughes*, 506 Mich at 530 (recognizing the distinction between a possessory seizure and privacy interest in a search, and noting *Riley's* use of that distinction with a seizure of a cell phone). That both Dole had probable cause to believe defendant's cell phone contained evidence of a crime, and defendant was only temporarily deprived of his possessory interest in the cell phone, play a significant role in evaluating the reasonableness of the time to obtain a search warrant.

Because of the possessory interest at issue, seizures of this length and longer have been upheld as reasonable. *United States v Martin*, 157 F3d 46, 54 (CA 2, 1998) (upholding 11-day seizure given delays in ability to acquire warrant, the relinquishing of the container to the third-party United Parcel Service, and the interests at issue); *Laist*, 702 F3d at 614 (holding that a 25-day delay between a seizure and a warrant was permissible); *United States v Mitchell*, 565 F3d 1347, 1352-1353 (CA 11, 2009) (21-day delay unreasonable); *Burgard*, 675 F3d at 1034-1035 (six-day delay reasonable). As the Second Circuit observed in *Martin*, "while we would normally expect police officers to secure a search warrant in considerably less time than was taken here, under the particular circumstances present here, we can not say that the delay in securing the . . . warrant was so 'unreasonable' as to violate the Fourth Amendment." *Martin*, 157 F3d at 54. The delay here comprised two weekend days and three work days, and defendant never sought return of his phone until the Wednesday that the search warrant was obtained. See *United States v Middleton*, 595 F Supp 3d 1277, 1285 (ND Ga, 2022) (finding a 12-day delay in seeking a search warrant of the defendant's phone was reasonable, especially considering that the defendant never asked for its return during that time). Though in hindsight there may have been speedier ways for Dole to have ensured a warrant was sought before then, his actions to secure the phone in a Faraday bag and seek a warrant upon his return to work were not unreasonable.

Nor do we agree with defendant that Dole created the exigency when he returned to defendant's house and informed him of his findings. In fact, the underlying premise of defendant's argument is legally flawed, for the *King* Court dispelled the very notion that a police officer unlawfully creates the exigency by providing information to the suspect that could raise the concern that the suspect could destroy evidence. In *King* the Court rejected the various federal and state court created tests regarding the so-called "police-created exigency" doctrine, and instead held that the exigent circumstances exception applies so long as "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment . . . ." *King*, 563 US at 461-462. In explaining its decision, the Court rejected the "reasonable foreseeability" test adopted by some courts, which had invalidated warrantless searches on the ground that police approaching the suspect would increase the likelihood that the suspect would destroy evidence. *Id*. at 464-465. Such a rule would cause unpredictability as well as "unacceptable and unwarranted difficulties for law enforcement officers" that were not required by the constitution. *Id*. at 465-466.

As the trial court found, Dole was upfront in his dealings with defendant and never engaged in nor threatened conduct that could violate the Fourth Amendment. The record discloses that Dole went back to inform defendant about his findings, and to retrieve the phone, and did so in an ordinary and professional manner. Although he informed defendant that he would have to seek a warrant if defendant did not turn over his phone, that is simply a matter of fact. Under these facts, Dole did not unlawfully create the exigency. See *State v Darter*, 350 So 3d 370, 385 (Fla App, 2022) ("In reaching our decision, we reject the defendant's argument that the detectives' actions

created the exigent circumstances leading to the warrantless seizure of his cell phone. Neither the detectives' interview of the defendant, nor their on-site search of his work computer with his supervisor's consent, constituted 'engaging or threatening to engage in conduct that violates the Fourth Amendment.' "), citing *King*, 563 US at 462.

Finally, it is worth noting that nothing prohibited Dole from continuing the investigation after the first interview, and returning to defendant's house even if he already determined that he had probable cause, as " '[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause.' Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution." *King*, 563 US at 467 (citation omitted; alteration in original). See also *United States v Ashley*, 647 F Supp 3d 526, 534-535 (ED Tex, 2022).

The trial court's order denying defendant's motion to suppress evidence is affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood