*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

HASSAN ASSAD ALWAILY,

        Defendant-Appellee.

UNPUBLISHED
April 21, 2022

No. 358258
Wayne Circuit Court
LC No. 20-002369-01-FC

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

While investigating defendant for the murder of Balkees Sadek, police officers seized defendant's cell phone without a warrant during a traffic stop. A forensic examination of defendant's cell phone uncovered incriminating evidence against defendant, resulting in the prosecution charging defendant, as a fourth-offense habitual offender, MCL 769.12, with four felony counts: felony murder, MCL 750.316(1)(b); first-degree premeditated murder, MCL 750.316(1)(a); tampering with evidence in a criminal case punishable by more than 10 years' imprisonment, MCL 750.483a(5)(a) and (6)(b); and lying to a police officer in a violent crime investigation, MCL 750.479c(1)(b) and (2)(d). The trial court subsequently granted in part defendant's motion to suppress the evidence obtained from the forensic examination of his cell phone, but denied defendant's motion to suppress the statements he made during the traffic stop. The prosecution now appeals the trial court's order by leave granted.[1] We reverse.

## I. FACTUAL BACKGROUND

In the late afternoon of April 6, 2020, Sadek's sisters discovered Sadek strangled to death in her bathtub. Sadek is presumed to have died earlier that day. Sadek's sisters named defendant as a potential suspect because he and Sadek had a tumultuous on-and-off dating relationship, defendant had previously harassed Sadek by sending her father inappropriate pictures of her, and

---

[1] *People v Alwaily*, unpublished order of the Court of Appeals, entered October 15, 2021 (Docket No. 358258).

defendant had recently threatened to make Sadek's life hell. When officers first began looking into defendant as a person of interest in Sadek's murder, they discovered a patrol officer had briefly followed defendant's vehicle around 1:39 a.m. the morning of the murder in an area roughly five minutes away from Sadek's home. Consequently, officers began surveilling defendant at his home, and were in the process of obtaining a warrant for his cell phone when defendant left his home for work on April 8, 2020. Hoping to speak with defendant about his relationship with Sadek and to see if he had his cell phone, officers pulled over defendant for having illegally tinted windows. During the traffic stop, officers informed defendant that they wanted to speak to him about his relationship with Sadek and they were going to obtain a warrant to search his cell phone. Defendant complied when officers asked to take the cell phone. Officers did not search the cell phone, however, until they received a search warrant for it less than an hour later.

Although defendant told officers he had not spoken to Sadek in about a week, a forensic examination of his cell phone revealed that defendant deleted a text message to Sadek indicating he was "on the way" to see her at about 2:00 a.m. the morning of the murder. The forensic examination also revealed that defendant's cell phone was turned off just after 2:00 a.m. and turned on just before 7:00 a.m. the morning of the murder, defendant searched how to delete Google location history from his cell phone the afternoon of the murder, and defendant drank a unique brand of bottled water that was found at Sadek's home after the murder, despite Sadek not drinking bottled water. Surveillance footage from near Sadek's home showed defendant's vehicle entering Sadek's neighborhood around 2:15 a.m. the morning of the murder and leaving the neighborhood around 5:25 a.m. Sadek's home-security system indicated the alarm was deactivated around 2:15 a.m. that morning, at which time a side door was opened, and the side door did not open again until around 5:20 a.m. Based on cell phone provider GPS data obtained with a warrant, officers determined that Sadek's cell phone was in her home between 11:30 p.m. on April 5, 2020, and 4:35 a.m. on April 6, 2020, defendant was in the area where officers observed his vehicle around 1:39 a.m. on April 6, 2020, and defendant was at his home around 2:00 a.m. when he sent the text informing Sadek he was on his way. Although Sadek's cell phone was never recovered, officers were able to determine that the cell phone was turned off between about 4:30 a.m. and 5:50 a.m. that morning, at which time GPS information placed the cell phone at a park about six miles away from Sadek's home. Based on this evidence, the prosecution charged defendant with the aforementioned offenses.

Defendant subsequently moved to suppress the evidence obtained from the forensic examination of his cell phone because the police officers seized the cell phone without a warrant or valid consent. After an evidentiary hearing on the validity of defendant's consent, defendant filed a supplemental brief in support of his motion to suppress the forensic examination, to which the prosecution responded arguing both the consent and exigent-circumstances exceptions to the general warrant requirement applied. The trial court held a hearing on defendant's motion to suppress, at which the parties argued consistently with their briefs, except the prosecution did not further emphasize the exigent-circumstances issue. The trial court determined that the officers performed a valid traffic stop, but did not have valid consent to seize defendant's cell phone. The trial court stated that exclusion of the evidence was the applicable remedy when evidence is obtained as a result of a Fourth Amendment violation and, consequently, it suppressed any evidence obtained from the forensic examination of defendant's cell phone. The prosecution now appeals.

## II. ANALYSIS

The prosecution argues that the trial court improperly suppressed the evidence obtained from defendant's cell phone because the seizure of defendant's cell phone was reasonable under the exigent-circumstances exception to the Fourth Amendment's warrant requirement. The prosecution argues that the police officers had reason to believe defendant's cell phone contained evidence regarding Sadek's murder that defendant would destroy if the cell phone was not seized during the traffic stop. Notwithstanding its belief that the seizure of the cell phone was reasonable, the prosecution also argues suppression of the evidence under the exclusionary rule was an improper remedy given the circumstances of the case. We agree that the trial court improperly suppressed the evidence.

### A. STANDARDS OF REVIEW AND BACKGROUND LAW

This Court reviews "de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). This Court reviews for clear error "any findings of fact made during the suppression hearing" and it reviews de novo "whether the Fourth Amendment was violated and . . . whether an exclusionary rule applies." *Id*. A factual finding is clearly erroneous if this Court is left with "a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

Both the United States Constitution and the Michigan Constitution "protect against unreasonable searches and seizures."[2] *Id*., citing US Const, Am IV; Const 1963, art 1, § 11. The legality of a search or seizure depends on its reasonableness, which "requires a fact-specific inquiry that is measured by examining the totality of the circumstances." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). Because warrantless searches or seizures generally are per se unreasonable, a search or seizure complies with the Fourth Amendment if police officers had a warrant or "their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020) (quotation marks and citation omitted). Under the exigent-circumstances exception to the Fourth Amendment's warrant requirement, police may seize property they have probable cause to believe contains contraband or evidence of a crime so long as they can "articulate specific and objective facts" that "reveal a necessity for immediate action" to prevent the immediate removal or destruction of the evidence. *People v Blasius*, 435 Mich 573, 593-594; 459 NW2d 906 (1990). The exigent-circumstances exception to the general warrant requirement, however, applies only if the police did not create the exigent circumstances by engaging in or threatening to engage in conduct violative of the Fourth Amendment. *Kentucky v King*, 563 US 452, 462-463, 469; 131 S Ct 1849; 179 L Ed 2d 865 (2011).

Generally, under the judicially created exclusionary rule, "evidence that is obtained in violation of the Fourth Amendment is inadmissible as substantive evidence in criminal

---

[2] The protection against unreasonable searches and seizures in the Michigan Constitution is "construed as providing the same protection as that of its federal counterpart." *People v Stevens*, 460 Mich 626, 634-635; 597 NW2d 53 (1999).

proceedings." *Moorman*, 331 Mich App at 485 (quotation marks and citation omitted). The exclusionary rule, however, is designed to proactively safeguard Fourth Amendment rights through its deterrent effect on police misconduct, not to retroactively cure a violation of an individual's Fourth Amendment rights. *People v Frazier*, 478 Mich 231, 247-248; 733 NW2d 713 (2007). Accordingly, there is no constitutional right to suppression of evidence; rather, "suppression of evidence should be used only as a last resort" when police officers engaged in flagrant misconduct and the exclusionary rule's "remedial objectives" outweigh its "substantial social costs." *Id*. at 247, 249 (quotation marks and citations omitted).

## B. THE TRIAL COURT IMPROPERLY SUPPRESSED THE EVIDENCE OBTAINED FROM DEFENDANT'S CELL PHONE

The trial court incorrectly concluded that the police officers violated the Fourth Amendment when they seized defendant's cell phone and, consequently, the trial court improperly suppressed the evidence obtained from the cell phone.

As an initial matter, neither party contests the validity of the traffic stop on appeal, and it is clear that the police officers validly stopped defendant because the officers' direct observations supplied them reasonable suspicion that defendant was driving with illegally tinted windows. See *Hyde*, 285 Mich App at 436-437 (explaining a traffic stop is valid so long as the officer has an articulable and reasonable suspicion that the vehicle or its occupant is subject to seizure for a violation of law). Thus, the question is whether the police officers' seizure of defendant's cell phone at the valid traffic stop was reasonable, notwithstanding their failure to obtain a warrant prior to the seizure. On appeal, the prosecution abandoned the issue of the consent exception to the Fourth Amendment's warrant requirement and instead raised only the issue of the exigent-circumstances exception. This Court need not defer to any factual findings on the matter because the trial court did not address the prosecution's exigent-circumstances argument. See *People v White*, 294 Mich App 622, 627; 823 NW2d 118 (2011) ("if factual findings are made by the trial court in relation to the motion to suppress, we defer to those findings . . . ."). Defendant argues that the prosecution is now providing a post hoc explanation for the warrantless seizure of the cell phone only because its consent argument failed in the lower court. Because the prosecution preserved the issue by raising the argument before the lower court, however, the prosecution may provide a more detailed argument before this Court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020) ("a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court.").

If police officers have probable cause to believe a container holds evidence of a crime and the "exigencies of the circumstances demand it," officers may warrantlessly seize the property "pending issuance of a warrant to examine [the property's] contents." *US v Place*, 462 US 696, 701; 103 S Ct 2637; 77 L Ed 2d 110 (1983). Similarly, police may briefly prevent an individual from entering his or her own home to preclude destruction of evidence while awaiting a warrant to search the home. *Illinois v McArthur*, 531 US 326, 335-336; 121 S Ct 946; 148 L Ed 2d 838 (2001). In *McArthur*, the United States Supreme Court held that the officers' prevention of the defendant from entering his home was reasonable because: (1) the police had probable cause to believe the home contained unlawful drugs because the defendant's wife indicated so; (2) the police had "good reason to fear that, unless restrained, [the defendant] would destroy the drugs before they could return with a warrant"; (3) the police "made reasonable efforts to reconcile their

law enforcement needs with the demands of personal privacy" because they waited to receive a search warrant before searching the home; and (4) the police "imposed the restraint for a limited period of time, namely, two hours." *Id.* at 332. Under these lines of reasoning, the United States Supreme Court has indicated that "it is reasonable to expect that incriminating evidence will be found on a [cell] phone regardless of when the crime occurred," *Riley v California*, 573 US 373, 399; 134 S Ct 2473; 189 L Ed 2d 430 (2014), and it is not per se unreasonable to seize a cell phone to prevent destruction of evidence while seeking a warrant, see *id.* at 388 (explaining it was a "sensible concession" for the defendants to "concede that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant.").

Similar to the reasoning in *McArthur*, the police officers here had reason to believe that seizing defendant's cell phone was necessary to prevent the imminent destruction of evidence. First, officers had probable cause to believe defendant's cell phone contained evidence of a crime because Sadek's sisters informed police that defendant and Sadek had an unstable relationship, and he had previously used his cell phone to harass Sadek by sending inappropriate pictures of her to Sadek's father. Additionally, officers observed defendant's vehicle near Sadek's home the morning of the murder, so the cell phone could have also shed light on defendant's movement and conduct that morning. Second, the police had good reason to fear defendant would destroy evidence on his cell phone because they had informed him at the traffic stop that they were seeking a warrant for the cell phone and they wanted to speak with him about his relationship with Sadek. The officers could reasonably assume defendant, after becoming aware that he was a person of interest in the murder investigation, may immediately thereafter delete any evidence if the cell phone was not seized. Moreover, it appeared the murderer took Sadek's cell phone away from the scene, leading to a reasonable inference that defendant would also seek to hide his cell phone or evidence contained therein. These amounted to "specific fact[s]" beyond "a mere possibility" supporting a reasonable and objective belief that defendant might destroy evidence on the cell phone. *Blasius*, 435 Mich at 595. Third, the police officers made reasonable efforts to reconcile their need to preserve the evidence with defendant's rights because they only *seized* the cell phone at the traffic stop; officers did not *search* the cell phone until they obtained a search warrant less than an hour later. Fourth, for a similar reason, the warrantless seizure lasted only a limited period of time before officers shortly thereafter obtained a search warrant.

Contrary to defendant's argument, the police officers did not impermissibly create the exigent circumstances merely by informing defendant at the traffic stop that they were going to obtain a warrant for his cell phone. The officers were in the process of obtaining a warrant for defendant's cell phone when he unexpectedly left his home that officers were surveilling. Acting quickly to preserve the evidence on the cell phone, the officers decided to pull over defendant to see if he had the cell phone with him. As explained earlier, the officers performed a valid traffic stop on the basis of the illegal window tint on defendant's vehicle. *Hyde*, 285 Mich App at 436-437. Because the police officers did not engage in unconstitutional conduct by pulling over defendant, they did not impermissibly create the exigent circumstances supporting the warrantless seizure of defendant's cell phone. See *King*, 563 US at 471-472 (holding the exigent-circumstances exception applied when officers lawfully knocked on the defendant's door and the defendant began destroying evidence inside his home).

Therefore, the police officers' seizure of defendant's cell phone was reasonable under the exigent-circumstances exception to the Fourth Amendment's warrant requirement. *Blasius*, 435

Mich at 593-594. Because the police officers did not violate the Fourth Amendment when they seized defendant's cell phone, the trial court erred by suppressing the evidence resulting from the forensic examination of the cell phone. See *Frazier*, 478 Mich at 247-249 (explaining suppression of evidence is appropriate only when there is flagrant police misconduct).

### III. CONCLUSION

The trial court order granting defendant's motion to suppress evidence is reversed in part as it pertains to the forensic evidence obtained from defendant's cell phone, and this matter is remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan