PEOPLE v SMITH

Docket No. 118679. Submitted August 5, 1991, at Grand Rapids.
Decided November 4, 1991, at 9:00 A.M.

Steven P. Smith was convicted by a jury in the Calhoun Circuit
Court of unarmed robbery and aggravated assault. He then
pleaded guilty of being a second felony offender with regard to
the unarmed robbery conviction. The court, James C. Kingsley,
J., sentenced him to 13 to 22½ years in prison for the habitual
offender conviction and 145 days in jail for the aggravated
assault conviction. He appealed, alleging error in the trial
court's refusal to suppress certain evidence and testimony.

The Court of Appeals *held:*

1. The trial court erred in determining that the police offi-
cers' initial entry into the defendant's apartment without a
warrant was justified on the basis of exigent circumstances.
However, the evidence obtained after the illegal entry was
properly admitted under the independent source doctrine be-
cause it was the product of a source wholly independent of the
illegal entry, a search warrant validly obtained after the illegal
entry. Nothing seen by the officers during their initial, illegal
entry either prompted the officers to seek the warrant or was
presented to the magistrate and affected the decision to issue
the warrant; the warrant was sought and obtained on the basis
of the victim's oral account of the robbery, including the
victim's description of what evidence could be found inside the
apartment.

2. Any error in admitting testimony by a police officer
regarding what he observed upon his initial, illegal entry into
the apartment was harmless in view of the other evidence of
the circumstances of the crime and the condition of the apart-
ment.

Affirmed.

DANHOF, C.J., concurred in the result only.

REFERENCES

Am Jur 2d, Evidence §§ 415, 416, 416.5.

Comment Note—"Fruit of the poisonous tree" doctrine excluding
evidence derived from information gained in illegal search. 43
ALR3d 385.

EVIDENCE — SEARCHES AND SEIZURES — SUPPRESSION OF EVIDENCE —
    ILLEGAL ENTRY — INDEPENDENT SOURCE DOCTRINE.

An illegal entry upon private premises by police officers does not
require suppression of evidence subsequently discovered at
those premises pursuant to a search warrant that was obtained
on the basis of information wholly unconnected with the initial,
illegal entry where nothing seen by the officers upon their
initial entry either prompted them to seek a warrant or was
presented to the magistrate and affected the magistrate's deci-
sion to issue the warrant.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Conrad Sindt,* Prosecut-
ing Attorney, and *Ronald S. Pichlik,* Assistant
Prosecuting Attorney, for the people.

*Hubbell & Hubbell, P.C.* (by *Stuart D. Hubbell*),
for the defendant on appeal.

Before: DANHOF, C.J., and WAHLS and GRIFFIN,
JJ.

GRIFFIN, J. Following a jury trial, defendant was
convicted of one count of unarmed robbery, MCL
750.530; MSA 28.798, and one count of aggravated
assault, MCL 750.81a; MSA 28.276(1). At a subse-
quent proceeding, defendant pleaded guilty of be-
ing a second felony offender with regard to the
unarmed robbery conviction, MCL 769.10; MSA
28.1082. Defendant was sentenced to 13 to 22½
years in prison for the habitual offender conviction
and 145 days in jail for the aggravated assault
conviction. He now appeals as of right, and we
affirm. In doing so, we recognize and apply the
independent source doctrine.

I

This appeal arises out of a beating and robbery
that took place on the evening of November 27,

1988. The victim in this case was defendant's neighbor, Gene Douglas. The beating and robbery took place inside defendant's apartment. The police, after speaking with the victim, went to defendant's apartment and knocked on the door. After hearing movement inside, the officers kicked in the door and arrested defendant and two others. The police did not have a warrant to enter the apartment.

II

In his first argument on appeal, defendant contends that the trial court erred in refusing to suppress certain evidence of the crime found inside the apartment. Specifically, defendant argues that the police officers' entry into his apartment without a warrant was illegal and that the subsequently obtained evidence was the "fruit of the poisonous tree," *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). We agree that the entry into defendant's apartment without a warrant was illegal. However, we disagree that the evidence at issue should have been suppressed. We hold that the evidence was properly admitted because it was the product of a source wholly independent of the illegal entry.

A

At the suppression hearing, the police attempted to justify their entry into the apartment without a warrant on the basis of exigent circumstances. Specifically, the officers testified that because of the amount of blood at the scene, they thought there might be another victim inside the apartment. The officers further testified that they feared that evidence of the crime might be destroyed.

After reviewing the transcript, we are constrained to agree with defendant that the officers failed to establish the existence of exigent circumstances. We first note that the trial court agreed with defense counsel that the police did not have probable cause to believe that another victim was inside the apartment. We find no clear error in this determination. Second, we are persuaded that the officers had no reasonable basis in fact to believe that there was an imminent risk that evidence would be destroyed or removed from the premises. See *People v Blasius,* 435 Mich 573, 593-595; 459 NW2d 906 (1990). Thus, to the extent that the trial court may have found the entry without a warrant justified on the basis of exigent circumstances, we think it clearly erred.[1]

---

[1] The exact reasoning behind the trial court's ruling is not altogether clear. At the conclusion of the hearing, the court stated:

We are confronted with what I believe to be an issue as to what the officers should have done when they were outside the door and heard the noise inside. They had seen Mr. Douglas. There was evidence of a fresh wound. There was a report of being robbed. He indicated that he was assaulted. He was injured, that money was taken. It may have been only pocket change, but at least it was money given, and he told the officers that the assailants were still in this particular apartment.

When they go to the door and they knock, they hear noises on the inside. The question then becomes what should the officers have done. Should they have withdrawn, at least one of them, and secured the arrest warrant or were they justified in entering the apartment?

I believe they were justified in entering the apartment. They knew that a felony had been committed and I believe they have probable cause to believe that the perpetrators of that crime were still inside, and I do that based on two reasons. One, they were told that by the victim, and two, when they went there, they heard the noise and no one responded to their knocking at the door.

But there was no statement by the victim to the officers about a broken bottle, and I believe that the broken bottle element comes exclusively from the observations made by the officers at the time they went into the apartment. I further think that the officers have the right to arrest the defendant and transport him to the station.

Again, they knew a crime had been committed. They brought

However, the mere fact that the officers originally entered defendant's apartment illegally does not mandate suppression of the evidence in question. The fact remains that the evidence was obtained pursuant to a search warrant that was subsequently issued. The question before us then is whether the initial entry tainted the legality of the subsequent search. We conclude that it did not.

**B**

In *Segura v United States,* 468 US 796, 805; 104 S Ct 3380; 82 L Ed 2d 599 (1984), the United States Supreme Court held that an illegal entry by police officers upon private premises did not require suppression of evidence subsequently discovered at those premises pursuant to a search warrant that had been obtained on the basis of information wholly unconnected with the initial entry. In so holding, the Court described what has become known as the independent source doctrine:

It has been well established for more than 60 years that evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is "so

---

the victim over to observe the defendant and identified the defendant as one of those who assaulted him. So, they properly placed the defendant under arrest and took him to the station. There was no need for *Miranda.* It was a voluntary statement in the police car and that will not be excluded.

I frankly will exclude from evidence the bottle or broken bottle fragments. That was not related to them by the victim. It was done as a result of their observations, and I think that those observations were outside the necessary scope of their activities made in arresting the defendant.

All other items seized, I think, are consistent with the information that the victim gave to the officer before their entering the apartment. So, the statement is not suppressed. The only item that is suppressed in the return and tabulation is number five, pieces of broken Mountain Dew bottle.

attenuated as to dissipate the taint," *Nardone v United States* [308 US 338, 341; 60 S Ct 266; 84 L Ed 307 (1939)]. It is not to be excluded, for example, if police had an "independent source" for discovery of the evidence:

"The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. *If knowledge of them is gained from an independent source they may be proved like any others." Silverthorne Lumber Co v United States* [251 US 385, 392; 40 S Ct 182; 64 L Ed 319; 24 ALR 1426 (1920)] (emphasis added.)

In short, it is clear from our prior holdings that "the exclusionary rule has no application [where] the Government learned of the evidence 'from an independent source.'" *Wong Sun, supra,* at 487 (quoting *Silverthorne Lumber Co, supra* at 392); see also *United States v Crews,* 445 US 463 [100 S Ct 1244; 63 L Ed 2d 537] (1980); *United States v Wade,* 388 US 218, 242 [87 S Ct 1926; 18 L Ed 2d 1149 (1967); *Costello v United States,* 365 US 265, 278-280 [81 S Ct 534; 5 L Ed 2d 551 (1961).[2]

Later, in *Murray v United States,* 487 US 533; 108 S Ct 2529; 101 L Ed 2d 472 (1988), the Supreme Court extended the independent source doctrine to include evidence that had been previously discovered in plain view at the time of the illegal entry. The ultimate question, said the Court, is whether the search pursuant to a warrant was "a genuinely independent source" of the evidence at

[2] The independent source doctrine, and its functional equivalent, the independent discovery doctrine, have recently been discussed by this Court in the context of various factual situations. See, e.g., *People v Potra,* 191 Mich App 503, 508; — NW2d — (1991); *People v Kroll,* 179 Mich App 423, 428-429; 446 NW2d 317 (1989); *People v Harajli,* 148 Mich App 189, 193-196; 384 NW2d 126 (1986). Also see *People v Oswald (After Remand),* 188 Mich App 1, 6-7; 469 NW2d 306 (1991).

issue. *Id.* at 542. Thus, if nothing seen by the officers upon their initial entry either prompted the officers to seek a warrant or was presented to the magistrate *and* affected the decision to issue the warrant, the evidence need not be suppressed. *Id.*

C

Applying these principles to the present case, we find that the search warrant and the evidence obtained thereby were the product of a source independent of the initial illegal entry. A review of the affidavit submitted by Officer Rivera in support of his request for a search warrant reveals that the warrant was sought and obtained on the basis of the victim's oral account of the robbery, including the victim's description of what evidence could be found inside the apartment. The entire two-page document contains only a single cursory reference to what was seen by Officer Rivera during the initial illegal entry of the apartment. Furthermore, the issue of an independent source was addressed at the suppression hearing. Officer Rivera testified as follows:

> *The Court:* Officer Rivera, the information contained in the affidavit and the search warrant that you gave to Magistrate Betty Strong, did any of that come from what you observed in the apartment, sir, when you were there?
>
> *Officer Rivera:* No, sir. I got the information from the victim.
>
> *The Court:* What about the green coat, all this other detail?
>
> *Officer Rivera:* I didn't know anything about that, if I got it from—as far as the green coat.
>
> *The Court:* Mr. Schaeffer, may I see the search warrant, please?

*Mr. Schaeffer* [*defense counsel*]: Yes.

*The Court:* Appearing above Betty Strong's signature is the following typed in language: One knife, a pair of glasses, change (United States currency), one green coat or vest with blood stains, a bottle or broken bottle, one brown footstool, blood stains and spatters, and any other evidence of criminal activity. Now, Officer Rivera, did any of that information or those items come from observations you made while you were inside the apartment?

*Officer Rivera:* The only thing I saw, not we, while I was in the apartment was the blood and the place itself was a mess. The knife, United States currency came from the victim. The victim was the one that told me he had been robbed of such and such amount of money with a knife.

*The Court:* What about the pair of glasses?

*Officer Rivera:* He said his pair of glasses should be in the apartment, that they were knocked off of his face.

*The Court:* What about one green coat or vest with blood stains?

*Officer Rivera:* It is possible I could have saw that while I was in there also, but through the mess in the apartment.

*The Court:* What about the bottle or broken bottle?

*Officer Rivera:* There was a lot of broken glass in there. The victim told me that it was either a bottle or an ashtray he had been hit with.

*The Court:* He did not say a knife?

*Officer Rivera:* Yes. He did. He said one of the suspects had a knife.

*The Court:* But he did state it was a bottle or an ashtray that was used?

*Officer Rivera:* That's correct. He said the knife and his glasses and the currency.

*The Court:* What about the one brown footstool?

*Officer Rivera:* He said that that was what he was sitting on when he got hit in the head.

*The Court:* Mr. Schaeffer, do you have any other questions then of the officer?

*Q.* [*by Mr. Schaeffer:*] Officer, did you put in your report that the victim told you he was struck with a bottle?

*A.* I believe it was struck with an ashtray.

*Q.* You just told us a few minutes ago that he told you it was an ashtray or bottle.

*A.* That's correct. That should be in the report, sir.

*Q.* Are you saying the information that you gave on your affidavit for the search warrant is totally independent of whatever you saw when you went into the apartment?

*A.* As far as the knife and glasses and items like that, yes, sir. The apartment was dark when we got in there. All we saw was the Black male subject. I walked through—the house was a mess. There was clothes and everything else laying around, broken bottles and glasses, and items like that and I looked for the victim [sic] where I found the victim [sic] in the closet area.

On the basis of these facts, we conclude that the evidence at issue was not the fruit of the initial unlawful entry but rather the product of the validly obtained search warrant. Accordingly, the exclusionary rule is inapplicable. The trial court did not err in refusing to suppress the evidence.[3]

III

For his second and final issue, defendant claims that he is entitled to reversal because Officer Rivera was allowed to testify regarding certain

---

[3] A review of the court's opinion reveals that it relied, at least in part, on the independent source doctrine. Indeed, the court excluded evidence of the broken glass because it concluded that the glass was the one item not mentioned in the victim's conversation with Officer Rivera. In any case, it is well settled that we will not reverse where the right result is reached, but for the wrong reason. See, e.g., *People v Lucas,* 188 Mich App 554, 577-578; 470 NW2d 460 (1991).

things he observed upon his initial entry into the apartment. We disagree. In view of the other evidence of the circumstances of the crime, as well as evidence of the condition of the apartment, any error in admitting this testimony was harmless. MCR 2.613(A); MCL 769.26; MSA 28.1096; *People v Oswald (After Remand),* 188 Mich App 1, 8; 469 NW2d 306 (1991).

Affirmed.

WAHLS, J., concurred.

DANHOF, C.J., concurred in the result only.