# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 11, 2016

v

No. 327235
Oakland Circuit Court
LC No. 2013-247325-FH

STEVEN RANDALL RAY,

Defendant-Appellant.

Before: MURPHY, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions for possessing with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possessing with intent to deliver less than 50 grams of morphine, MCL 333.7401(2)(a)(*iv*), possessing with intent to deliver less than 50 grams of oxycodone, MCL 333.7401(2)(a)(*iv*), possessing with intent to deliver hydrocodone, MCL 333.7401(2)(b)(*ii*), possessing less than 25 grams of heroin, MCL 333.7403(2)(a)(*v*), felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The circuit court sentenced defendant to 49 days in jail, with credit for 49 days served, for each conviction except for the felony-firearm convictions, for which defendant was sentenced to two years' imprisonment. We affirm.

The investigation into defendant arose from a tip from a confidential informant. On April 1, 2013, Southfield Police Department Detective Paul Kinal, assigned to the Oakland County Narcotics Enforcement Team (OCNET), submitted an affidavit to the 46th District Court requesting that the court authorize members of his law enforcement team to install a mobile tracking device on defendant's vehicle. Kinal stated the following to support his belief that defendant was involved in criminal activity:

A- That Affiant received information from a credible/reliable confidential informant (C/I) that Steven Ray, a black male in his forties, was trafficking large quantities of prescription drugs from his home in Madison Heights Michigan to the State of Ohio. The C/I advised that Ray owned a white Cadillac Escalade, a vehicle that he used to traffic the drugs.

B- That based on the information provided in the tip, Affiant initiated an investigation and learned the following[:]

-1-

(1)　That Affiant utilized Accurint (a law enforcement database) and located a Steven Randall Ray 10-15-71 residing at 30140 Elmhurst in the city of Madison Heights.

(2)　That Accurint and Talon Lein showed that Ray was a registered owner of a 2009 Cadillac Escalade bearing Michigan plate 3JLE02.

(3)　That Affiant has personally observed the white 2009 Cadillac Escalade bearing Michigan plate 3JLE02 within the last 48 hrs parked in front of 30140 Elmhurst.

(4)　That Affiant has personally observed Ray exit the white 2009 Cadillac Escalade bearing Michigan plate 3JLE02 in the drive of 30140 Elmhurst within the last 90 days.

(5)　That Affiant ran Ray through the Michigan Automated Prescription System (MAPS) and discovered that he had no prescriptions issued to him for the last 2 years.

(6)　That Affiant believes the confidential informant to be reliable and/or credible for the following reasons:

> a. That Affiant has training and experience in the use of confidential informants.
>
> b. The C/I was cooperating voluntarily.
>
> c. That Affiant has used this particular credible and reliable confidential informant on multiple occasions over the last 3 years throughout Oakland and Wayne Counties.
>
> d. That Affiant believes the C/I was/is telling the truth based on his/her own observations

Probable cause was found and an order issued allowing law enforcement to "install, maintain and remove a mobile tracking device" upon the 2009 Cadillac Escalade.

On April 16, 2013, officers initiated a traffic stop of defendant's vehicle and found him in possession of 3.1 grams of cocaine, 0.5 grams of heroin, 3 grams of marijuana, and 630 pills, some of which were confirmed to be morphine, amphetamine, and oxycodone. That same day, Kinal requested and obtained a search warrant for defendant's home. The affidavit for this second warrant included many of the same statements from the initial affidavit for the tracking-device warrant.

However, Kinal further averred that on April 2, 2013, members of OCNET were surveilling defendant's residence "with the goal of installing the tracking device" when they observed defendant exit his house and enter his vehicle carrying a black gym bag. Defendant then drove to a Meijer in Madison Heights, where he pulled alongside another vehicle "a great

distance from the main entry doors." The driver of the second vehicle entered defendant's vehicle for a few minutes. When the two vehicles drove away, OCNET officers attempted to follow the second vehicle, but they were unsuccessful because, Kinal maintained, the driver "deliberately drove through several red traffic signals during rush hour traffic." Kinal stated that by utilizing multiple law enforcement databases, he was able to determine that the registered owner of the second vehicle had a prior drug-offense conviction. According to Kinal defendant later drove to a K-Mart in Warren, where he again stopped "a great distance from the front entry door" and pulled alongside a Chevrolet HHR. A person exited the HHR and entered defendant's vehicle; both left separately within minutes.

On April 16, 2013, Kinal continued, OCNET surveilled defendant's house again, as well as the Madison Heights Meijer. Kinal averred that a short time after the Chevrolet HHR previously observed on April 2nd arrived in the Meijer parking lot, defendant left his residence and drove toward the Meijer. Thereafter, a police officer conducted a traffic stop of defendant because his vehicle had tinted windows and because he had disobeyed a stop sign. According to Kinal, defendant gave consent to allow the officer to search his vehicle. The cocaine, heroin, and hundreds of prescription pills mentioned above were found.

Based on the affidavit, a magistrate found probable cause and issued a search warrant authorizing law enforcement to search defendant's residence. Subsequently, officers executed the search warrant and recovered 2,605 prescription pills, some of which were confirmed to be morphine, oxycodone, and hydrocodone. Officers also recovered four firearms from a bedroom.

Defendant filed a motion to suppress all of the evidence seized pursuant to both search warrants. In a motion hearing, the trial court stated that even if it was to give "the defendant the benefit of the doubt" that the tracking-device search warrant affidavit was lacking, not all of the evidence used in securing the second search warrant was "fruit of the poisonous tree." The court found that the surveillance on defendant's house and Kinal's independent observations supported some of the evidence for the second search warrant, and that evidence did not derive from the tracking-device search warrant. It denied defendant's motion to suppress.

Defendant argues on appeal that the trial court erroneously denied his motion to suppress. He argues that the affidavit used to support the search warrant for the tracking device was insufficient because there was nothing in the affidavit indicating that the confidential informant was credible or that the information provided by the informant was reliable. He also argues that the good-faith exception to the exclusionary rule is not applicable here because any reliance on the search warrant was not objectively reasonable given the affidavit was so clearly deficient. Although we agree that the affidavit used to support the search warrant for the tracking device was insufficient, we nevertheless conclude that the evidence need not be suppressed.

This Court reviews for clear error the trial court's findings of fact in deciding a motion to suppress evidence. *People v Stumpf*, 196 Mich App 218, 220 n 1; 492 NW2d 795 (1992). "This Court will not reverse those findings unless left with a definite and firm conviction that a mistake was made." *Id*. "The reviewing court should ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Head*, 211 Mich App 205, 208-209; 535 NW2d 563 (1995). In making this determination, we

are mindful that a magistrate's probable cause determination is entitled to great deference. *People v Keller*, 479 Mich 467, 476-477; 739 NW2d 505 (2007).

A magistrate or judge may not issue a search warrant unless there is probable cause to justify the search. US Const, Am IV; Const 1963, art 1, § 11. A probable-cause finding means that a reasonable person would believe, based on the facts and circumstances, "that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). When an affidavit is used to support a probable-cause finding, "the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id.* The affiant's experience is relevant. *Id.*

Additionally, if the information used to support probable cause is supplied by an unnamed person, the affidavit must contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "If personal knowledge can be inferred from the stated facts, that is sufficient to find that the informant spoke with personal knowledge." *Stumpf*, 196 Mich App at 223. An independent police investigation may confirm the accuracy and reliability of the source and thus support probable cause. *Waclawski*, 286 Mich App at 699. Additionally, self-authenticating details may establish reliability. *People v Ulman*, 244 Mich App 500, 509-510; 625 NW2d 429 (2001).

The affidavit for the tracking-device warrant lacked sufficient information for a magistrate to determine that the confidential informant had personal knowledge of the allegations. The allegation cited in the affidavit that defendant "was trafficking large quantities of prescription drugs from his home in Madison Heights Michigan to the State of Ohio" is a generalized statement with no particular details and thus is not sufficient to support a finding that the informant spoke with personal knowledge.

The affidavit also did not provide any information indicating that any inculpatory evidence provided by the confidential informant in the current prosecution was reliable. Kinal verified the informant's allegation that defendant owns a white Cadillac Escalade and lives in Madison Heights. But these facts do nothing more than verify that the informant knows where defendant lives. Put another way, verification of such insignificant details does not denote that the informant's criminal allegations are reliable. Similarly, while self-authenticating details may establish reliability, *Ulman*, 244 Mich App at 509-510, vague allegations of drug trafficking are not self-authenticating as the informant does not allege that he participated in or observed any specified illegal activity.

Accordingly, the affidavit used to support the search warrant for the tracking device was both statutorily and constitutionally insufficient. However, this conclusion does not necessitate a conclusion that all of the evidence seized in this case must be excluded, as defendant suggests.

Evidence obtained indirectly as a result of an illegal search is "fruit of the poisonous tree" and must be excluded from evidence. *Wong Sun v United States*, 371 US 471, 486-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). However, the independent-source doctrine is an exception to this rule. *Id.* at 487; see also *People v Smith*, 191 Mich App 644, 649-650; 478 NW2d 741 (1991)

("The ultimate question . . . is whether the search pursuant to a warrant was 'a genuinely independent source' of the evidence."). Where the evidence obtained was a product of a source independent of the initial illegal search, the evidence does not need to be suppressed if the illegal search did not prompt the officers to seek a warrant and the magistrate was not affected by evidence from the illegal search to issue the warrant. See *Smith*, 191 Mich App at 650. " '[W]hen a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.' " *People v Melotik*, 221 Mich App 190, 201; 561 NW2d 453 (1997), quoting *United States v Shamaeizadeh*, 80 F 3d 1131, 1136 (CA 6, 1996) (alteration in *Melotik*).

Here, the trial court correctly found that "some of the things that were used for the affidavit in the subsequent search warrant were fruit of the poisonous tree but some of it was not." The search warrant affidavit to search defendant's home included the same information determined to be insufficient in the first search warrant affidavit. It also included substantial information that Detective Kinal obtained by using the tracking device. But, significantly, the affidavit also included statements that Kinal and other officers personally observed defendant engaging in suspicious activity before they installed the tracking device authorized by the first warrant.

In particular, the officers surveilled defendant at his residence and saw him place a gym bag in his vehicle and drive to Meijer. At Meijer, defendant parked "a great distance from the main entry doors" and met with another person. The other person spent minutes in defendant's vehicle before driving away in an evasive fashion. Through law enforcement databases, officers determined that the individual was a convicted drug offender. Defendant later went to K-Mart, where a similar scene occurred. Again, he parked "a great distance from the front entry door," and an individual spent less than eight minutes in defendant's car before they both left separately.

On April 16, 2013, less than two weeks later and after the tracking device was installed, defendant was stopped as he was driving his vehicle in the direction of the Madison Heights Meijer. The individual driving the Chevrolet HHR seen in the Meijer parking lot that night admitted that she was there to meet defendant to purchase pills.

The traffic stop was based on traffic violations for illegal tinted windows, MCL 257.709(1)(a), and disobeying a stop sign, MCL 257.611(1), making it a legal stop independent from the drug investigation. *People v Kazmierczak*, 461 Mich 411, 419 n 8; 605 NW2d 667 (2000). And defendant consented to the search of his vehicle, which yielded the illicit drugs; consent is an exception to the search warrant requirement, *People v Dagwan*, 269 Mich App 338, 342; 711 NW2d 386 (2005), and defendant does not claim that his consent was involuntarily given. Thus, the evidence recovered from the traffic stop was also obtained through an independent source and should not be suppressed as fruit of the poisonous tree.

Taking into account the two parking lot meetings observed prior to the installation of the tracking device and the individuals involved, as well as the substantial amount of drugs found in defendant's possession during the traffic stop, a reasonable person could infer that defendant was

selling drugs in the community.  See *People v Nunez*, 242 Mich App 610, 614-615; 619 NW2d 550 (2000) (finding that there is a "reasonable inference that drug traffickers often keep evidence of illicit activity in their homes").  Therefore, the second search warrant, authorizing the search of defendant's home, was supported by probable cause with evidence obtained independent from the first search warrant.

Affirmed.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra