# Court of Appeals, State of Michigan

# ORDER

Colleen A. O'Brien
Presiding Judge

PEOPLE OF MI V RAYMOND JOHN BOGUCKI

Mark T. Boonstra

Docket No. 372629

LC No. 2023-001848-FH

Randy J. Wallace
Judges

The August 13, 2025 opinion is hereby AMENDED to correct a clerical error: on page four of the opinion, footnote five currently states: There was no definition provided for "Social networking evidence."

Footnote five is amended to state: There was no definition provided for "Social networking evidence," but since neither party has raised it as an issue, this opinion does not address the breadth or validity of this undefined term.

In all other respects, the August 13, 2025 opinion remains unchanged.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 11, 2025
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAYMOND JOHN BOGUCKI,

        Defendant-Appellant.

UNPUBLISHED
August 13, 2025
2:48 PM
APPROVED FOR
PUBLICATION
September 11, 2025
11:25 AM

No. 372629
Berrien Circuit Court
LC No. 2023-001848-FH

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted the trial court's order denying his motion to quash evidence from two search warrants and subsequent order denying his motion for reconsideration.[1] We find that the second warrant, which was issued in 2024, is sufficiently particular pursuant to the Michigan Supreme Court's recent precedent in *People v Carson*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166923); and the 2024 warrant is likewise valid pursuant to the independent source doctrine because it draws from sources independent of the 2023 warrant. As a result, we find the validity of the 2023 warrant to be a moot issue and accordingly decline to address it. We affirm the denial of the motion to quash the evidence obtained pursuant to the second warrant.

## I. FACTS

On March 11, 2023, the Benton Charter Township Fire Department was dispatched to a house fire in Berrien County. After forcing entry into the smoke-filled house, firefighters observed

---

[1] *People v Bogucki*, unpublished order of the Court of Appeals, entered February 14, 2025 (Docket No. 372629).

-1-

a victim with duct tape binding his hands, legs, and face. The victim, who was unresponsive, was transported to the front lawn, and appeared to have died prior to the firefighters' arrival. The results of an autopsy conducted the following day indicated that the cause of death was smoke inhalation and thermal injuries. The manner of death was homicide.

Law enforcement also arrived at the scene and an investigation was initiated. During a sweep of the property, they found that a side door of the house was unsecured—the screen door was closed and the main door was ajar with a key left in its deadbolt on the outside. Inside the house, a gas can was found in the living room. Police also searched a backyard pole barn, a door of which showed signs of signs of forced entry. Inside the pole barn, police found some 3M tape backing and a knife, about two feet from the door. A camera that had been mounted to the pole barn was found on the ground by the door. Cameras were also located in the house, but police discovered that the account for the cameras had been deactivated about an hour before the fire was reported, which resulted in no videos being recovered.

A fire investigator's report indicated that the fire had been intentionally ignited and that it started in the hallway and a bedroom of the house.

Less than a week after the fire, detectives interviewed defendant, a former employee of the victim. Defendant stated that the victim was like a grandfather to him and that they were very close. He also said that he had worked for the victim from around September 2021 to August 2022. Defendant claimed to have last seen the victim around Thanksgiving 2022. During that first interview, detectives asked defendant whether he had his cell phone with him. He responded that the phone was in his car. However, when the detectives left the interview room, defendant pulled it from his pocket. Due to inconsistencies in the information defendant provided to police, as well as the deception regarding possession of the phone, police decided to seize defendant's cell phone.[2]

Shortly thereafter, the detectives obtained a search warrant for defendant's cell phone (the 2023 warrant). The affidavit requesting the warrant and resulting warrant described the property to be searched and seized as follows:

> Any and all electronic data and wire communications stored in memory within the mobile communication device, SIM Card, and removable memory card, including but not limited to phonebook contacts, call logs, SMS/ MMS messages, email, instant messaging, photographs, and other communications, including any content that may be synchronized to or on the device from any service or application. This is to include the inspection/ examination of the aforementioned mobile communication device, bypass of device security features and removal of internal components if necessary to obtain the aforementioned data.

Included in the affidavit, in support of the officer's assertion that probable cause existed for the search, was his statement that "it is known that mobile communication devices are often used to

---

[2] The inconsistencies included conflicting statements regarding defendant's whereabouts at various times on the day before and day of the fire.

plan, commit, and conceal criminal activity and evidence. Therefore, data obtained from mobile communication devices and records created by these devices can assist law enforcement in establishing the involvement of a possible suspect or suspects." The warrant further said that police contacted Megan Curtis, who had previously been hired by the victim to assist with services for his business, including bookkeeping, and who provided police with information that allowed detectives to log into the victim's email account. As a result, detectives found an email indicating that the password for the victim's surveillance camera account had been changed and that the account had been deleted. The affidavit also said Curtis told police that the victim had recently been talking about some individual taking money out of his bank account, via an online food delivery service and other electronic means, and that the victim told Curtis that he suspected defendant was that individual because the victim had previously caught defendant stealing money from his house.

Upon receiving the search warrant, detectives thoroughly searched defendant's cell phone, including a "full file system download," and obtained all records, including defendant's search engine history. The searches were highly incriminating given their nature and timing in the hours preceding the crime, including searches conducted the day before the victim was killed such as "how do murders get caught," "how can I get poison," "can lawyers tell police," "if someone passes away when they put charges on you is the case still going," and "how long does it take for a body to suffocate." Searches conducted on the date of the homicide included "live police scanner free," and "what does victims services do."

During a second interview with defendant on April 5, 2023, defendant said that no one had the password to his phone and that no one had access to the phone during that time. When confronted with the searches found by police, defendant denied making most of them.

As the investigation continued, detectives executed several other search warrants. The affidavits for some of those warrants included the evidence of defendant's search history (i.e., evidence uncovered as a result of the 2023 warrant).

In February 2024, this Court issued *People v Carson*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 355925), rev'd in part ___ Mich ___ (2025) (Docket No. 166923), in which we held that a search warrant for a full download of the defendant's cell phone was invalid because it failed to particularly describe what the police sought to search and seize. That warrant gave the police "license to search *everything* on [the] defendant's cell phone in the hopes of finding anything, but nothing in particular, that could help with the investigation." *Id*. at ___; slip op at 12. This Court indicated that the warrant "authorized precisely the form of 'wide-ranging exploratory searches the framers intended to prohibit.' "[3] *Id*. at ___; slip op at 13, quoting *People v Hughes*, 506 Mich 512, 539; 958 NW2d 98 (2020).

---

[3] On July 31, 2025, just before the oral argument in this case, the Michigan Supreme Court issued *People v Carson*, ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166923), which affirmed the Court of Appeals holding that "the warrant at issue was insufficiently particular" in its description

In March 2024, detectives in the present case requested a new search warrant for defendant's cell phone in response to the Court of Appeals' decision in *Carson* (the 2024 warrant).[4] The 2024 warrant affidavit did not mention the search engine history or other evidence obtained by way of the 2023 search warrant. While the affidavit for the 2023 warrant is five pages long, the affidavit in support of the 2024 warrant is twelve pages long (including a four-page attachment) and provides far more detail than the 2023 affidavit. While the 2023 warrant allowed police to seize everything within the phone without limitation, the 2024 warrant was limited to digitally stored data between the dates of September 2021 and March 12, 2023, and it was to be used to search for evidence related to the victim's homicide and arson of the subject house on March 11, 2023, as well as digitally stored data related to the unlawful use of the victim's financial transaction devices. The warrant defined the "Digitally stored data to be searched [as]: Web related evidence[,] Communications evidence[,] Social networking evidence[,] Media evidence[,] Application usage evidence[,] Operating system evidence[, and] Location & travel evidence." Detailed definitions for all but one of those terms,[5] as well as the bases for why affiant believed there was probable cause to search those areas of the cell phone, were provided as a four-page attachment to the affidavit.

Defendant moved to quash the evidence from both search warrants. Regarding the 2023 warrant, he argued that it was invalid pursuant to this Court's *Carson* decision because it lacked the necessary particularity, that it was not supported by probable cause, and that the affiant made material omissions in the warrant. Regarding the 2024 warrant, defendant argued it was "fruit of the poisonous tree" tainted by the invalid 2023 search warrant. Defendant also sought an evidentiary hearing to challenge the veracity of the 2023 warrant under *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). In response, the prosecutor acknowledged that *Carson* was controlling law in Michigan, yet nonetheless took "no position as to the validity for the March '23 search warrant in the present case," i.e., she effectively abandoned the argument that the 2023 warrant was valid. The issue regarding the validity of the 2023 warrant was moot, the prosecutor argued, because she relied solely on the 2024 warrant. At the scheduled hearing on defendant's motion, the trial court invoked MCR 2.119(E)(3), which permits trial courts to dispense with oral argument. The court explained that the parties did "a great job at briefing" such that "any further oral argument [was] not necessary." The trial court acknowledged this Court's decision in *Carson*, but found that the arguments pertaining to the validity of the 2023 search warrant were moot because a second warrant was issued. The court denied the motion and, in support of its finding that the second warrant was valid, cited to the following cases: *United States*

---

of the what the police sought to search and seize and that such an "unrestrained search of defendant's cell phone violated the Fourth Amendment." *Carson*, ___ Mich at ___; slip op at 17.

[4] The prosecution asserts that the 2024 warrant was obtained out of an abundance of caution, in response to the *Carson* Court of Appeals decision, and that it was a separate and more particularized search warrant for specific contents of defendant's phone.

[5] There was no definition provided for "Social networking evidence."

*v Evers*, 669 F3d 645 (CA 6, 2012); *United States v Johnson*, 789 F3d 934 (CA 9, 2015); and *United States v Castro*, 881 F3d 961 (CA 6, 2018).[6]

Defendant moved for reconsideration and argued, *inter alia*, that the trial court wrongfully dispensed with oral argument. The court then entered an order denying defendant's motion. The order noted that the Michigan Court Rules grant trial courts reasonable discretion with regard to whether to hold hearings concerning a range of motions and held that it was denying defendant's motion for reconsideration on the basis that defendant had merely presented the same issues as previously ruled upon by the court, and presented authorities and arguments which defendant had already argued, or could have argued prior to the court's original decision. This Court granted defendant's delayed application for leave to appeal, limited to the issue of whether the trial court erred in failing to quash the search warrants or hold an evidentiary hearing as to the veracity of the 2024 search warrant.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion to suppress." *People v Joly*, 336 Mich App 388, 395, 410; 970 NW2d 426 (2021). "A trial court's findings of fact are reviewed for clear error." *Id*. "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted). A trial court's decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008).

## III. ANALYSIS

## A. SEARCH WARRANTS

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. Similarly, the Michigan Constitution of 1963 provides that:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous

---

[6] The written order denying defendant's motion to quash both search warrants said the motion was denied for those reasons stated on the record.

weapons seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.]

"Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022). "[T]he general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020).

The last two phrases of the Fourth Amendment, the particularity requirement, only allows the issuance of search warrants "particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV; see also *Carson*, ___ Mich at ___, slip op at 10-11. The Michigan Constitution has a substantively similar provision at Const 1963, art 1 § 11. *Id*. at 11 n 11. Article 1 § 11 was amended, effective December 19, 2020, to explicitly state that a warrant is required to search or access electronic data or electronic communications.[7] The particularly requirement in describing the items to be seized is intended to provide reasonable guidance to officers executing the warrant and thereby prevent an undirected exercise of discretion in determining what is to be seized. *People v Unger*, 278 Mich App 210, 245; 749 NW2d 272 (2008). A general warrant, which fails to comply with the particularity requirement, is prohibited. See *Carson*, ___ Mich at ___; slip op at 11.

The Michigan Supreme Court has declined to adopt a rule deeming it always reasonable for a police officer to review the entirety of the digital data seized, pursuant to a warrant, based on "the mere possibility that evidence may conceivably be found anywhere on the device, or that evidence might be concealed, mislabeled, or manipulated." *Hughes*, 506 Mich at 541. "Such a per se rule would effectively nullify the particularity requirement of the Fourth Amendment in the context of cell-phone data and rehabilitate an impermissible *general warrant* that would in effect give police officers unbridled discretion to rummage at will amount a person's private effects." *Id*. at 541-542 (citations and quotations marks omitted). In so finding, *Hughes* relied upon *People v Herrera*, 357 P3d 1227 (Colo 2015), describing that case as holding that: "allowing a search of an entire device for evidence of a crime based upon the possibility that evidence of the crime could be found anywhere on the phone and that the incriminating data could be hidden or manipulated would 'render the warrant a general warrant in violation of the Fourth Amendment's particularity requirement.' " *Hughes*, 506 Mich at 542, quoting *Herrera*, 357 P3d at 1228.

More recently, as noted above, the Michigan Supreme Court has held that "in the context of a cell-phone search, we must jealously guard the requirements of the Fourth Amendment, including the particularity requirement." *Carson*, ___ Mich at ___; slip op at 16. A search warrant for access to everything on a cell phone, for the purpose of finding anything that could assist with an investigation, is a general warrant that fails the particularity requirement. *Id*. at 16-19.

---

[7] The search warrant in *Carson* was issued after the amendment to Const 1963, art 1 § 11 became effective.

## B. THE EXCLUSIONARY RULE AND EXCEPTIONS

"The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment rights of citizens to be free from unreasonable searches and seizures." *People v Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003). The rule generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search. *Id*. at 498-499. "Additionally, the exclusionary rule prohibits the introduction into evidence of materials and testimony that are the products or indirect results of an illegal search, i.e., the so-called 'fruit of the poisonous tree' doctrine." *People v Stevens*, 460 Mich 626, 633-634; 597 NW2d 53 (1999) (citation omitted). The purpose of the rule is to deter police misconduct. *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004).

However, there are exceptions to the exclusionary rule. *People v LoCicero (After Remand)*, 453 Mich 496, 508-509; 556 NW2d 498 (1996). The good-faith exception " 'renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid.' " *People v Hughes*, 339 Mich App 99, 111; 981 NW2d 182 (2021), quoting *People v Helstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004). At the same time, this Court has recognized that a warrant may be so facially deficient, in failing to particularize the place to be searched or the things to be seized, that executing officers could not reasonably have presumed it to be valid. *Carson*, ___ Mich App at ___; slip op at 14-15, rev'd in part on other grounds ___ Mich ___ (2025).

Under the independent source doctrine, law enforcement may include evidence "obtained on the basis of information wholly unconnected with" illegal conduct, such as an unlawful search, seizure, or entry. *People v Smith*, 191 Mich App 644, 648-649; 478 NW2d 741 (1991). "Evidence is not to be excluded if the connection between the illegal police conduct and the discovery, search, and seizure of the evidence is so attenuated as to dissipate the taint, such as when the government learns of evidence from an independent source . . . ." *People v Jordan*, 187 Mich App 582, 588; 468 NW2d 294 (1991).

## C. 2023 SEARCH WARRANT

Defendant argues that the 2023 warrant was invalid because it did not comply with the particularity requirement of the Fourth Amendment, meaning that the 2023 search of the cell phone was illegal. As already noted, we find the validity of the 2023 warrant to be a moot issue, based on our holding with regard to the subsequent 2024 warrant, and decline to address it as a result.

## D. 2024 SEARCH WARRANT

Defendant next argues that information seized pursuant to the 2024 warrant constitutes fruit of the 2023 warrant that he claims to be invalid and it must therefore be excluded as "fruit of the poisonous tree." The prosecution's response is that the warrant issued in 2024 was valid pursuant to the independent source doctrine because it drew from sources independent of the 2023 warrant, and therefore any property seized under that warrant does not harken back to the purportedly invalid 2023 warrant as its source. We agree with the prosecution.

The issue of whether a search warrant is sufficiently independent from illegally obtained evidence hinges on "whether the search pursuant to the warrant was a 'genuinely independent source' of the evidence at issue." *Smith*, 191 Mich App at 649-650 (citation omitted). If the sources for the subsequent search are "so attenuated as to dissipate the taint" of the misconduct, then the evidence from that subsequent search is not excluded. *Jordan*, 187 Mich App at 588.

In *Smith*, this Court relied upon the Supreme Court's decision in *Murray v United States*, 487 US 533; 108 S Ct 2529; 101 L Ed 2d 472 (1988). While conducting surveillance, agents in *Murray* observed the defendants driving vehicles into and out of a warehouse containing a tractor-trailer rig with a long container. *Id*. at 535. They saw the defendants turn those vehicles over to other drivers, who were followed and arrested. Legal searches of those vehicles revealed that they contained marijuana. After receiving that information, agents forced their way into the warehouse, saw numerous burlap-wrapped bales in plain view, left without disturbing the bales, and did not return until they had a search warrant. Pursuant to the warrant, agents entered the warehouse and seized bales of marijuana. *Id*. at 535-536. The defendants moved to suppress that evidence arguing the warrant was invalid because the agents did not inform the magistrate about their warrantless entry and that the warrant was tainted by that entry. *Id*. at 536. The Supreme Court held that the ultimate question was whether a search that had been conducted via the subsequent warrant was in fact a genuinely independent source of the information at issue. *Id*. at 542. Had the agents' decision to seek the warrant been prompted by what they saw on the initial entry, or if information obtained during that entry was presented to the magistrate and affected his decision to issue the warrant, then the search conducted via the warrant would not have been a genuinely independent source. *Id*.

In the present case, the facts demonstrate that the officers' decision to seek the 2024 warrant was not prompted by the information that was found in defendant's cell phone after the 2023 search, nor was any information obtained from the prior search of the cell phone presented to the judge or magistrate who signed the 2024 warrant.

The affidavit in support of the 2024 warrant, along with its attachment, contains an overwhelming amount of information discovered by law enforcement completely independent of the information found in defendant's cell phone as a result of the 2023 warrant, leaving no doubt that they had many reasons, independent of the 2023 search, to request a warrant for defendant's cell phone in 2024. Many of the facts establishing probable cause for the 2024 search warrant repeated allegations contained in the 2023 warrant, but the 2024 affidavit also included a large number of additional supporting facts, meaning that police had even more basis and motivation in 2024 to request a warrant than they did at the time of the first warrant. For example, in the 2024 affidavit, the affiant said Curtis revealed that, towards the end of defendant's working relationship with the victim, defendant began to take money from him and that the victim had been very vocal about this issue and would tell people about it, including persons that he and defendant worked with at job sites. Affiant also said Curtis explained that there were fraudulent charges totaling approximately $3,000 within the last year charged on the victim's debit card, mostly through an online food delivery service (delivery service) and an online videogame service (videogame service), and that the victim believed defendant was responsible. The affidavit discussed data received from a search warrant issued on the victim's bank account corroborating that he disputed dozens of transactions with the delivery service and videogame service between November 2022

and January 2023. The affidavit also contained significant additional facts corroborating the assertion that defendant was stealing from the victim, including:

- data obtained via a warrant executed on the delivery service demonstrating that an account in defendant's name used the victim's debit cards to purchase food;

- data obtained via a warrant executed on PayPal demonstrating that defendant had a PayPal account used to purchase food with one of the victim's debit cards;

- that such purchased food was delivered to defendant's residence; and

- that the victim's disputed bank transactions coincided with transactions defendant made with the delivery service.

The affidavit also referenced data showing that one of the victim's debit cards was linked to an account with the videogame service that was in defendant's name.

The attachment to the 2024 affidavit provided further information, including that:

- the delivery service and videogame service could be accessed through an application on a phone;

- that defendant told police that he had messaged and called the victim on his phone while working with the victim;

- defendant told police that he had been given permission by the victim to take a picture of the victim's debit card and use it (but that he needed to ask the victim's permission before doing so);

- the victim's camera surveillance system was the type that could be accessed through a cell phone;

- defendant told police someone was trying to frame him and that the operating system evidence on the phone would confirm or deny whether someone else had accessed his phone;

- the operating system would confirm or deny whether defendant was at the various locations he alleged to be on the date of the incident;

- the operating system would also indicate whether defendant accessed his phone during the time that he claimed to be asleep on the date of the incident; and

- the location data would also be able to confirm or deny whether the male in the picture shown to defendant at his first interview was him, and whether defendant was telling the truth when he said he had not been to the victim's home since November 2022.

The 2024 affidavit mentioned that defendant's phone was seized during his first interview and later searched, but the affiant noted that the new warrant was requested for the reasons

-9-

provided in the request, which "do not contain any evidence obtained from the . . . 2023 search warrant, and are separate and independent from the . . . 2023 search warrant." The affiant also said that the new search warrant was requested "[i]n light of" the new precedent presented by this Court's decision in *Carson*.

Although law enforcement in this case could not have a valid warrant issued by merely stating that the affidavit was separate and independent from the 2023 search warrant, the facts provided in support of the 2024 search warrant are completely devoid of evidence obtained from the 2023 search warrant. Those facts draw from the affiant's experiences throughout the investigation, interviews with defendant, an interview with Curtis, bank records, and records from the delivery service, videogame service, and PayPal. The facts appear to be genuinely independent from the information gleaned from execution of the 2023 search warrant. See *Smith*, 191 Mich App at 650. The most relevant evidence obtained from the 2023 search was defendant's search engine history, which was not mentioned in the 2024 search warrant. Given that the affiant provided independent evidence and grounds for the request, the 2024 search warrant was valid under the independent source doctrine. See *Jordan*, 187 Mich App at 588.

Defendant argues that the 2024 warrant and everything recovered as a result of it are "fruit of the poisonous tree" because "new" facts would never have been revealed absent the fruits of the first warrant and, therefore, the second warrant still benefits from the purportedly illegal act. However, defendant never actually identifies these "new" facts, i.e., he never identifies any facts that were discovered via the 2024 warrant that could not have been discovered without the information uncovered via the 2023 warrant. To be clear, of all the facts contained in the 2024 warrant, not a single one appears to have been obtained via the earlier search of defendant's phone. While it is true that some of the warrant affidavits filed after the 2023 warrant reference information police found on defendant's cell phone, defendant does not identify any information contained in the 2024 affidavit that was derived from those other warrants. Put another way, defendant has not alleged, let alone demonstrated, that the affidavits for the search warrants that allowed police to obtain data from the victim's bank account, delivery service, videogame service, or PayPal, referred to defendant's cell phone or anything found on defendant's cell phone.

Thus, we find that the warrant issued in 2024 was valid because it drew from sources independent of the 2023 warrant, meaning that any property seized under the 2024 warrant does not harken back to the purportedly invalid 2023 warrant as its source.

## E. OTHER SEARCH WARRANTS

Defendant argued for the first time in his motion for reconsideration in the trial court that other search warrants were issued in this matter that constitute "fruit of the poisonous tree" because the affidavits in support of those warrants relied on the evidence obtained after the 2023 search warrant, and some of them even explicitly reference the evidence that was found on defendant's cell phone. However, because defendant failed to properly preserve this argument, we will not

address it. "An issue is not preserved if it is raised for the first time in a motion for reconsideration." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021).[8]

## F. HEARINGS

We review a trial court's decision to omit or limit oral argument for an abuse of discretion. *Fisher v Belcher*, 269 Mich App 247, 252; 713 NW2d 6 (2005). Likewise, we review a trial court's decision to grant or deny an evidentiary hearing for an abuse of discretion. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted).

### 1. ORAL ARGUMENT

Defendant suggests that the trial court wrongfully denied him the right to present oral argument at the hearing on his motion to quash. Although this issue was not raised in defendant's questions presented, we will briefly address it.

"Oral argument, when allowed, should assist the court beyond the briefing." *Fisher*, 269 Mich App at 252. Under MCR 2.119(E)(3), "[a] court may, in its discretion, dispense with or limit oral arguments on motions . . . ." A trial court abuses its discretion under MCR 2.119(E)(3) if a party is deprived of an opportunity to respond to the opposing party's arguments. *People v Leonard*, 224 Mich App 569, 579; 569 NW2d 663 (1997). A trial court does not abuse its discretion in denying oral argument if the record demonstrates that the issue before the trial court was so thoroughly briefed as to "require[] no further elaboration." *Id.*

In the present case, the trial court properly invoked MCR 2.119(E)(3), explaining that the parties' briefs were so thorough as to require no additional elaboration:

> MCR 2.119(E)(3) [] gives the court discretion to dispense with or limit oral argument. So that's what I'm going to be doing today. You all have done a great job at briefing. I'm prepared and any further oral argument is not necessary. So I'll be invoking that court rule.

The record demonstrates that the issues were, in fact, thoroughly briefed in the lower court. Thus, we find that the court did not abuse its discretion by omitting oral argument regarding defendant's motion to quash the search warrants.

### 2. EVIDENTIARY HEARING

Defendant next argues that the trial court erred by not conducting an evidentiary hearing regarding the issuance of the warrants in this matter under *Franks*.

---

[8] To be clear, defendant may raise this issue with the trial court, but the issue is not presently before this Court.

-11-

Pursuant to *Franks*, 438 US at 155-156, a defendant is entitled "to an evidentiary hearing in order to show that the affidavit is void when the defendant makes a substantial preliminary showing of a deliberate falsehood or reckless disregard for the truth by the affiant." *Franklin*, 500 Mich at 103. "The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001). But the Michigan Supreme Court has held that a trial court has discretion to hold an evidentiary hearing on the veracity of a warrant affidavit "even in the absence of the substantial preliminary showing required by *Franks*." *Franklin*, 500 Mich at 111. The exercise of discretion addressed in *Franklin* was simply whether to convene an evidentiary hearing concerning the veracity of a search warrant. *Id*.

In his motion to quash the search warrants, defendant argued that the affiant made material omissions requiring the court to conduct a hearing under *Franks*, arguing that "[i]n Michigan, the rule from *Franks* has been extended to material omissions from affidavits," and cited to *People v Kort*, 162 Mich App 680, 685-686; 413 NW2d 83 (1987), abrogated on other grounds by *People v Russo*, 439 Mich 584, 603 n 32; 487 NW2d 698 (1992). Defendant set forth five bases for this argument:

(1) the description of defendant's reaction to the photograph, at his initial interview, omitted that the fact that the detective tricked him into believing it depicted himself;

(2) the affidavit did not disclose that the man in the photograph was not wearing glasses, unlike defendant who does wear glasses, and that he was wearing a coat unlike any worn by defendant;

(3) the affidavit does not disclose that the picture was sent to the police by Curtis;

(4) the affidavit did not disclose that Curtis had never met defendant or observed defendant and the victim together; and

(5) the affidavit did not disclose that Curtis suggested to police that defendant and the victim might be involved in a same sex relationship, (despite the fact that police were unable to corroborate that assertion).

The trial court declined to hold an evidentiary hearing, explaining:

Defendant is not arguing that the information contained in the affidavit which secured the search warrant was "reckless" or contained a "deliberate falsehood"; rather, he argues that the breadth of the search warrant based on the information was overbroad—an argument in itself which does not give rise to perhaps holding an evidentiary hearing pursuant to *Franks* for suppression—the argument is appropriate to be adjudicated and decided pursuant to MCR 2.119(F).

Thus, the court appears to have ignored defendant's argument that deliberate falsehoods were contained in the affidavit in the form of multiple material omissions. However, on appeal,

-12-

defendant completely abandons the argument that he was entitled to an evidentiary hearing because of material omissions referenced in his underlying motion.[9]

Instead of arguing that the trial court erred by not finding that a *Franks* hearing was required due to multiple material omissions contained in the affidavit, defendant raises new issues here, i.e., issues that were not raised in the motion to quash, below. Defendant first argues that, on the date of the hearing for his motion to quash, he expected a detective to be called as a witness by the prosecution, and defendant intended to cross examine him; however, defendant was prevented from obtaining any testimony from that witness because the court did not hold the evidentiary hearing. Second, defendant argues that further inquiry, via the evidentiary hearing, would have demonstrated the nature and extent of how the search of defendant's phone allegedly tainted all subsequent proceedings. In support of that assertion, defendant argues that all the warrants issued in this matter after the 2023 warrant included "fruit of the poisonous tree," or were otherwise tainted by the invalid 2023 warrant.

We find that, on appeal, defendant has effectively abandoned the issue of whether the trial court should have held an evidentiary hearing as to the veracity of the warrants issued in this matter by failing to actually make that argument here and, instead, presented arguments that were never made to the trial court in defendant's motion to quash. *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 415-416; 766 NW2d 874 (2009) (insufficiently briefed issues are deemed abandoned on appeal). Arguments pertaining to the detective's expected testimony were not raised in defendant's motion to quash. Regardless, as the Supreme Court noted in *Franks*, to mandate an evidentiary hearing, the challenge to the affidavit must be supported by more than a mere desire to cross examine. *Franks*, 438 US at 171. Also, as explained previously, in his motion to quash, defendant did not raise the issue of the various other warrants issued in this case (i.e., he did not argue that other warrants, in addition to the 2023 and 2024 warrant, should be quashed).

Thus, we cannot hold that the trial court abused its discretion by denying defendant's request for an evidentiary hearing or his subsequent motion for reconsideration of the trial court's decision.

For the reasons stated herein, we affirm the trial court's order denying defendant's motion to quash the 2024 search warrant and its order denying defendant's request for an evidentiary hearing.

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[9] In defendant's brief on appeal, the only mention of this argument regarding allegedly material omissions is contained in the statement of facts, which says that the motion to quash included this argument.